IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | NO. 02-3230 |
| V. | : | CIVIL ACTION |
| DELAWARE COUNTY ET AL | : | JURY TRIAL REQUESTED |

DEFENDANTS' CERTIFICATE OF COMPLIANCE
WITH COURT'S ORDER OF JULY 29, 2003

AND NOW, comes the Defendants, by and through their attorneys, Robert M. DiOrio, Esquire and Kathleen E. Mahoney, Esquire, hereby submitting this Certificate of Compliance with Court's Order of July 29, 2003 as follows:

I.  PRODUCTION OF ALL WRITTEN COMPLAINTS WITHIN
    TEN YEARS PRIOR TO THE FILING OF THE INSTANT SUIT

1. Defendants have produced all complaints which Defendants have been able to locate in the form of lawsuits, notices of claim and inmate grievances which occurred or were pending within ten (10) years of the filing of Plaintiff's law suit in the instant action, May 26, 2002. Defendants also produced a list of all lawsuits which Plaintiff's identified, which includes those cases which Defendants have not been able to locate in storage records.

   A.  **Inmate grievances**

2. Robert Burgwald, the custodian of records at the George W. Hill Correctional Facility, searched for and located all inmate grievances regarding medical claims from October, 1999 to the present, which totaled approximately 800. These have been produced to Plaintiffs.

3. Burgwald was unable to locate inmate grievances before October, 1999. Please find a true and correct copy of Robert Burgwald's Affidavit attached hereto as Exhibit "1."

   B.  **Lawsuits and notices of claims**

1

4. Approximately 117 lawsuits and notices of claims have been identified by Defendants as potentially involving claims of medical negligence. A list of the 117 lawsuits has been produced to Plaintiffs, and is attached hereto as Exhibit "2."

5. The search to identify potential medical negligence claims against Defendants was conducted by Josephine Chavez, administrative assistant at DiOrio & Sereni, L.L.P., Kathleen E. Mahoney, Esquire and Joan Galvin, claims administrator at Brokerage Professionals, Inc., the risk management administrator for Defendants, Delaware County and Delaware County Board of Prison Inspectors.

6. Ms. Chavez searched the "active" and "inactive" case histories of all prison litigation contained on the DiOrio & Sereni, L.L.P. computer database to compile a summary of all potential medical negligence claims. The case history is DiOrio & Sereni's method of tracking prison litigation, and describes the nature of the litigation, the basic facts of the case, the jurisdiction as well as various other information. Ms. Mahoney reviewed the list of case histories compiled by Ms. Chavez and determined which cases contained on the list were potential medical negligence cases.

7. In addition, Ms. Galvin of Brokerage Professionals, Inc. reviewed the computer files of Brokerage Professionals and culled all cases which involved medical negligence claims by reading the description of each claim contained on the computer screen for each claim. In so doing, she compiled a list of medical negligence cases. Then, she reviewed a handwritten, manual log of claims which was maintained prior to Brokerage Professionals' implementation of its current computer system, which was in or around mid-1994. She compiled a second list of medical negligence claims based upon her review of the manual log.

8. Copies of the DiOrio & Sereni case histories and the claims review from Brokerage Professionals are available for review by the Court, but Defendants would request an *in camera* review, as these materials contain confidential work-product information.

9. From the lists compiled by Joan Galvin and the list compiled at DiOrio & Sereni, Ms. Mahoney created a master list of cases and searched for these files in DiOrio & Sereni's storage records.

10. Since 1997, DiOrio & Sereni's storage records are maintained on two separate lists, one lists all prison litigation cases and the other lists all other non-prison litigation matters handled by the firm. A true and correct copy of these lists are attached hereto as Exhibits "3" and "4," respectively. Ms. Mahoney and administrative staff searched the prison litigation storage list to identify the location of the files identified as medical negligence cases. Certain files were located on this list, while others were not. Ms. Mahoney then reviewed the non-prison litigation storage list and located certain other files, which apparently, from time to time over the years, were inadvertently included on the non-prison litigation list. After reviewing the two lists, Ms. Mahoney reviewed the actual packing slips which were completed upon the closing of files to determine if she could identify the location of any files from the packing slips, but was unable to do so.

11. Prior to using these storage lists in 1997, the matter of closing files and sending them to storage was handled by Bianka DiOrio. Since that time, Ms. DiOrio has maintained a list of closed files and their locations in storage. Ms. Mahoney submitted the list of files to Ms. DiOrio, who then compared Ms. Mahoney's list to her own to identify the location of various records. A true and correct copy of Ms. DiOrio's list is attached hereto as Exhibit "5."

12. Ms. Mahoney ordered all the located files from storage. When the files arrived, Ms. Mahoney discovered that some of the storage company boxes included many additional files, approximately fifty-five (55), along with the files Ms. Mahoney ordered. To be as thorough as possible, Ms. Mahoney nonetheless reviewed each of these additional files to rule out that these files were potentially medical negligence claims. Of the additional 55 files, Ms. Mahoney discovered that 5 were arguably medical negligence claims, and therefore added those to the list of files to be produced.

13. Of those 117 claims and notices of lawsuits which were identified as potential medical negligence claims, Defendants were unable to locate 13 of those files in their storage records. These files appear at nos. 18, 28, 29, 63, 69, 76, 80, 84, 86, 87, 94, 193, 110, and 115 of the list attached hereto as Exhibit "2."

14. Docket reports for each of the above-mentioned files are attached hereto as Exhibit "6." Further, for the cases in which DiOrio & Sereni was the counsel of record, we are attempting to download all non-privileged materials regarding these cases from our computer files.

15. Additionally, Defendants were informed by Plaintiff's counsel that it had identified a case entitled Teri Myers-Bell and provided information relating to that case, which is included as No. 33 on Defendants' case list. A true and correct copy of Plaintiff's information is attached hereto as Exhibit "7." Ms. Mahoney attempted to identify this case on the United States District Court, Philadelphia Court of Common Pleas, and Delaware County Court of Common Pleas dockets by name and docket number, but could not identify this file. Further, she could not identify this file in DiOrio & Sereni's case histories.

16. Case no. 43, <u>Dwayne Brown</u> was initially identified by Ms. Mahoney as a potential medical negligence claim, but upon review of the complaint, Ms. Mahoney determined that this case did not involve a claim of medical negligence. A true and correct copy of the Petition for Writ of Habeas Corpus filed in this matter is attached hereto as Exhibit "8."

17. Case no. 66, <u>Timothy Fries</u> ultimately was determined not to involve a claim of medical negligence. Although a formal complaint was never filed in this case, a true and correct copy of a letter dated January 22, 1999 from Plaintiff to Deputy Warden Frank Bruno outlining the nature of his claim is attached hereto as Exhibit "9."

18. Case no. 78, <u>Allen Robert Johnson</u> was also determined not to involve a claim of medical negligence. A true and correct copy of the Application to proceed In Forma Pauperis filed in this matter is attached hereto as Exhibit "10."

19. Case no. 74, <u>Donzell Henderson</u> was not produced to Plaintiffs because it was dismissed by Order of the Court dated April 29, 1992, and therefore falls outside of the parameters of the Court's Order of July 29, 2003. A true and correct copy of the Court's Order is attached hereto as Exhibit "11."

20. Of the approximately 99 files which were located, Defendants produced all non-privileged documents to the Plaintiffs including but not limited to: all non-privileged correspondence; all pleadings; all motions (including motions for summary judgment and motions to dismiss) and accompanying memoranda of law; all court orders; all deposition transcripts; all paper discovery including interrogatories, requests for production of documents and requests for admissions; all pre-trial memoranda; all proposed voir dire, points for charge and verdict slips; all non-medical records; all records subpoenas; and all releases and copies of

settlement checks (as these items exist from case to case).

Generally, the following items were culled from the files: all privileged correspondence; all attorney hand-written notes; all legal research; all intra-office memoranda; all privileged emails; and all drafts of pleadings, motions and discovery responses.

Further, inmate medical and psychiatric records were not produced pursuant to the mandates of the Health Insurance Portability and Accountability Act of 1996.

## II  PRODUCTION OF CONTACT INFORMATION FOR THE 34 PERSONS LISTED IN PLAINTIFF'S COUNSEL'S LETTER DATED MAY 23, 2003

21. Ms. Mahoney contacted Ms. Sharon Rose, secretary to Warden John Caulfield at the George W. Hill Correctional Facility regarding last known addresses of those individuals who are no longer employed by Defendants. Ms. Mahoney faxed a list of these individuals to Ms. Rose who forwarded the list of Mary Rozday of the Human Resources Department of the George W. Hill Correctional Facility to search for the last known addresses. Ms. Mahoney also faxed the list to Deputy Warden Frank Green to attempt to identify the last known address of the individuals who were inmates at the prison.

22. The list of last known addresses was faxed back to Ms. Mahoney, who in turn provided the list to Plaintiff's counsel while they were present at Ms. Mahoney's office on August 6, 2003. A true and correct copy of this list is attached hereto as Exhibit "12."

23. By fax dated August 12, 2003, Ms. Mahoney followed up with an updated list which enumerated each of the 34 individuals and stated whether each individual was a current or former employee or inmate, and provided last known addresses for each of the former employees and/or inmates which could be found. A true and correct copy of the fax and list are attached hereto as Exhibit "13."

24. With respect to former inmates, Jim Latin, David Paschalla and Michael Vincent, Ms. Mahoney was informed by Deputy Warden Frank Green that he could not identify these individuals in the computer system. Ms. Mahoney communicated this information to Plaintiff's counsel. Plaintiff's counsel pointed out handwritten inmate statements of individuals whose names appear to be those listed herein (although the handwriting is somewhat difficult to read). Ms. Mahoney faxed these statements to Deputy Warden Frank Green and asked him to do another computer search for these individuals. Deputy Warden Green reviewed a roster of all inmates incarcerated at the relevant time period to attempt to identify these inmates. Upon completing this search, on August 27, 2003, Deputy Warden Green located an address for David Paschal, Inmate number 001987 at 1028 Baldwin Street, Chester, PA 19103. He could not identify an address for any of the other inmates.

25. Additionally, Deputy Warden Green initially advised Ms. Mahoney that inmate Jerry Gallagher was currently incarcerated at the George W. Hill Correctional Facility. This information was relayed to Plaintiff's counsel in Ms. Mahoney's letter of August 12, 2003. However, when Deputy Warden reviewed the roster of inmates on August 27, 2003, he determined that Jerry Gallagher has been a fugitive since July, 2000, for failure to appear for his weekend sentence. His name continued to appear "active" in the prison's computer system because his sentence remains "open," which caused Warden Green to conclude that Inmate Gallagher remained in custody, which is incorrect.

26. Further, Defendants informed Plaintiffs by the August 12, 2003 fax that they intended to represent former employees and/or independent contractors of the prison at their depositions in this matter as long as Defendants were able to locate these individuals through the

course of reasonable investigation, but that Defendants may not be able to control the appearance of former employees or independent contractors and guarantee their appearance in the same manner as current employees.  See, Exhibit "13."

27.  With respect to last known addresses of Dr. Brian Friedrick and Dr. Holland Hull, Mary Rozday of the human resources department of the George W. Hill Correctional Facility that because these individuals were independent contractors, there is no human resources file for them, and that their files have been maintained in the Health Services Department.

28.  Deborah Perretta, Health Services Administrator at the George W. Hill Correctional Facility informed Ms. Mahoney that both of these doctors terminated their relationship with the prison prior to Ms. Perretta's tenure as Health Services Administrator and she has no knowledge of the whereabouts of their files or the current addresses.  However, on August 27, 2003, Ms. Perretta informed Ms. Mahoney that after further investigation, the accounting department of the George W. Hill Correctional Facility had the following addresses on file:

(As of 1998)   Dr. Brian Friedrick:5030 State Road, Suite 2-25, Drexel Hill, PA 19026

(As of 1996)   Dr. Holland Hull:73 Rockridge Road, Upper Black Eddy, PA 18972

29.  Ms. Mahoney searched for updated addresses for each of the these doctors on the internet using both White Pages and Yellow Pages directories, but could not locate an address for either physician.  She also searched the Commonwealth of Pennsylvania Department of State professional licensure database and confirmed that neither of these individuals maintain an active license to practice medicine in the Commonwealth of Pennsylvania.  A true and correct copy of the results of this database search are attached hereto as Exhibit "14."

30.  Ms. Mahoney also informed Plaintiff's counsel, specifically Mr. Howard,  that the

prison could not identify "Bey Griffith" in the computer as either an employee or an inmate, and inquired as to how Plaintiff's counsel identified this name as a potential witness. Mr. Howard responded that he was not sure, but would check with Mr. Jeffries. To date he has not followed up with Ms. Mahoney in this regard, but if further information is developed, Ms. Mahoney will attempt to identify him.

**III    PRIVILEGE LOG**

31. The privilege log is in the process of being compiled, but given the volume of files involved it is not yet complete. A true and correct copy of the privilege log to date comprising 131 pages for 56 cases is attached hereto as Exhibit "15."

32. Therefore, Defense counsel respectfully requests additional time to complete the privilege log and/or the opportunity to investigate the appointment of a discovery master given the voluminous nature of the work yet to be completed.

33. By facsimile dated August 19, 2003, Ms. Mahoney represented to Plaintiff's counsel that her goal was to have the privilege log completed by August 28, 2003. A true and correct copy of Ms. Mahoney's fax of August 19, 2003 is attached hereto as Exhibit "16." This representation was made in response to Plaintiff's counsels' concerns regarding Ms. Mahoney's subsequent disclosure of non-privileged documents to Plaintiff's counsel after files were initially produced, as set forth in Plaintiff's counsels' fax of August 19, 2003, a true and correct copy of which is attached hereto as Exhibit "17."

34. Because the privilege log is not complete, it is possible that additional non-privileged materials may be discovered to have been inadvertently placed among the privileged materials. In the event that this occurs, Ms. Mahoney will immediately bring these materials to Plaintiff's

counsels' attention as has been the practice to date.

## IV    STATUS OF DOCUMENT PRODUCTION

35.  Ms. Mahoney has been informed by Plaintiff's counsel that they have completed their review of the first 28 files which were initially produced.

36.  Although photocopying of documents has not yet begun, counsel have been discussing the procedure for completing this task.

37.  Counsel are also discussing a schedule for the continuing review of the remaining files.

Respectfully submitted:

**DIORIO AND SERENI, LLP**

Date: _____        BY: _____
                            **ROBERT M. DIORIO**
                            I.D. No.: 17838


_____
**KATHLEEN E. MAHONEY**
I.D. No.: 77873
Front & Plum Streets
Media, Pa.  19063
(610) 565-5700

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

We, Robert M. DiOrio, Esquire, and Kathleen E. Mahoney, Esquire hereby certify that a true and correct copy of the foregoing Certificate of Compliance with Court's Order of July 29, 2003 was served on the date below by first class, U.S. mail, postage pre-paid, upon the following:

    Derrick Howard, Esquire
    John Rollins, Esquire
    **HOWARD ROLLINS, LLC**
    1319 South Broad Street
    Philadelphia, PA 19147

    David F. White, Esquire
    Dennis Herbert, Esquire
    **KELLY, McLAUGHLIN, & FOSTER**
    620 W. Germantown Pike
    Suite 350
    Plymouth Meeting, PA 19462

_____
**ROBERT M. DIORIO, ESQUIRE**
Pa I.D. No. 17838
**KATHLEEN E. MAHONEY**
Pa I.D. No. 77873
DiOrio & Sereni, L.L.P.
Front & Plum Streets
P.O. Box 1789
Media, PA 19063
(610) 565-5700
(610) 891-0652 (fax)

**Date:**_____

# **V E R I F I C A T I O N**

    I, Kathleen E. Mahoney, in the foregoing pleading, verify that the facts set forth therein are true and correct to the best of my knowledge, information and belief. This Verification is made subject to the penalties of 18 Pa. C.S. 4904, relating to unsworn falsification to authorities.

_____
**KATHLEEN E. MAHONEY**

Dated: _____