IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | NO. 02-3230 |
| V. | : | CIVIL ACTION |
| DELAWARE COUNTY ET AL | : | JURY TRIAL REQUESTED |

**DEFENDANTS' REPLY TO PLAINTIFF'S "RESPONSES AND OBJECTIONS TO DEFENDANTS' CERTIFICATE OF COMPLIANCE WITH COURT'S ORDER OF JULY 29, 2003"**

**I      PRELIMINARY STATEMENT**

Defendants' counsel were not surprised that Plaintiff's counsel filed Plaintiff's Responses and Objections to Defendants' Certificate of Compliance with Court's Order of July 29, 2003, especially since, even before the Certificate of Compliance was filed with the Court, Mr. Howard warned Ms. Mahoney that he was going "to make an argument" that Defendants failed to comply, and "not to take it personally." Plaintiff's counsel's objections are utterly without merit, including but not limited to the preposterous allegations that Defendants and their counsel have engaged in "obstreperous and unprofessional conduct;" nothing could be further from the truth. On the contrary, Defendants and their counsel, and in particular, Ms. Mahoney, have done everything humanly possible to comply with this Honorable Court's Order of July 29, 2003.

**II     ADDITIONAL GROUNDS FOR SANCTIONS**

    **A.     Defendants delayed service of the Certificate of Compliance to Plaintiff**

This is simply not true. According to the Court's Order, the Certificate of Compliance was "to be served within 30 days...," which it was, by regular mail on August 28, 2003.

Plaintiff's counsel complains that Ms. Mahoney had a courier hand-deliver it to the

1

Court, but not to them. In response, Ms. Mahoney asserts that the hand-delivery was not ready to be picked up until the end of the business day, which is evident from the time-stamp. She believed that the Certificate of Compliance would have arrived at Plaintiff's counsel's offices by Friday via U.S. Mail, so it made little difference whether she hand-delivered it or mailed it, and mailing it was less expensive and in compliance with the Court Order and the Rules of Civil Procedure. She was surprised to learn that it did not reach Plaintiff's office until after the holiday weekend. Mr. Howard sent a facsimile to Ms. Mahoney on Friday August 29, 2003 at 7:22 p.m. complaining that he had not yet received the Certificate of Compliance and alleging that his ability to conduct discovery was "prejudiced" by the "delay." Ms. Mahoney was already gone from the office when this facsimile arrived, and she did not receive the facsimile until her return to the office Tuesday morning, September 2, 2003. She promptly called Mr. Howard to see if the Certificate of Compliance arrived in Saturday's mail. When he informed her that it had not, she inquired as to the time of mail delivery to the Howard Rollins firm. Mr. Howard stated the mail generally arrived at approximately 1:00 p.m. *As a courtesy to Mr. Howard,* Ms. Mahoney asked Mr. Howard to phone her after the mail was delivered that day, and if the Certificate of Compliance had not yet arrived, she would make arrangements for a hand delivery. Mr. Howard agreed.

  When Ms. Mahoney had not heard from Mr. Howard by approximately 1:45 p.m., she attempted to reach him by telephone, unsuccessfully, and then made arrangements for a courier to hand deliver another copy of the Certificate of Compliance. Mr. Howard did not return Ms. Mahoney's call until 3:00 p.m. that day to inform her that the Certificate of Compliance had arrived by United States postal service. Ms. Mahoney's courier had already picked up the

second copy by that time, so Plaintiff's counsel now has two complete copies.

Defense counsel submits that Mr. Howard's facsimile of Friday night at 7:22 p.m. was nothing more than a calculated attempt to manufacture a reason to complain to the Court that defense counsel was not in compliance with the Court Order. If Mr. Howard was so concerned about not receiving the Certificate of Compliance, he could have and would have called Ms. Mahoney on her cell phone to inform her of this fact, in which case she could have made arrangements for a hand delivery as of Friday. Instead of doing that, however, he chose to write a facsimile at 7:22 p.m. on a Friday of a holiday weekend, which defense counsel avers was precisely in the hopes that no one would receive it until the following Tuesday.

Ultimately, there was no "delay" as alleged by Plaintiff. Further, Plaintiff's counsel had the ability to ameliorate any prejudice they perceived they suffered by attempting to contact Ms. Mahoney by cell phone, but chose not to do so. Their arguments on this issue are disingenuous and unfair.

      **B.**    **Defendants' *Ex Parte* communications**

Plaintiff's counsel complains that Defendants should have produced the Privilege Log to them. Instead, Defendants in good faith submitted the Log to this Honorable Court pending further instructions. Of course, if it is determined that the Plaintiff should receive the Privilege Log, then Defendants will immediately produce it to them. However, as previously stated, Defendants have genuine concerns about protecting the attorney-client privilege in other unrelated pending cases. The instant case is unusual in that some of the privileged information contained on the log concerns the defense strategy of other active cases. Presenting these concerns to this Honorable Court and asking for further guidance is certainly reasonable and not

sanctionable conduct, as suggested by Plaintiff's counsel.

### C. Defendants have not substantiated why documents were withheld pursuant to HIPAA

Plaintiff's counsel makes this argument in bad faith.

Ms. Mahoney tried to engage Plaintiff's counsel in a discourse regarding this issue on at least two separate occasions. The first was during the conference held by the Court on July 25, 2003. At that time, she alerted Mr. Rollins and Mr. Howard to the fact that she believed that HIPAA prohibited her from releasing medical records of other inmates. At that time Mr. Howard responded that "did not think that he was all that interested in the medical records." Ms. Mahoney asked then if a stipulation could be reached to that effect, to which Plaintiff's counsel refused.

The second time Ms. Mahoney attempted to discuss this issue was on August 6, 2003, when Mr. Rollins and Mr. Howard were present in her office to review files. At that time, Ms. Mahoney initiated a conversation on a variety of topics, including the HIPAA issue. She clearly informed Mr. Rollins and Mr. Howard that she wanted to discuss the issue in an effort to minimize potential future conflicts. She again informed Mr. Rollins and Mr. Howard that she believed that HIPAA prohibited the production of inmate medical records, but she also pointed out that she was not completely sure about this and asked for their input. Instead of engaging in a discussion, they merely instructed her to put her position in writing, which she did.

Ms. Mahoney never learned of Plaintiff's counsel's position on the HIPAA issue until they filed their "Responses/Objections." If they were acting in good faith, they could have and should have brought their position and law in support thereof to Ms. Mahoney's attention at the earliest possible time. Instead, they waited until now, in an effort to manufacture another

"problem" with Ms. Mahoney's compliance with the Court Order.

As for the substantive issue, Ms. Mahoney has subsequently conducted further research on the HIPAA issue, including consulting other attorneys who specialize in this area of the law, and she continues to assert that upon her information and belief, the prison is a "covered entity" under HIPAA, and therefore, may not disclose inmate's Protected Health Information (PHI). It is true that the HIPAA statute carved out an exception to the "Notice of Privacy Practices" Rule for inmates, but this merely means that the inmates do not have to receive prior notice of privacy practices. It does not specifically authorize the prison to disclose PHI in this particular instance.

Further, at this late date, it would be most burdensome to have to go back through every file and pull all medical records, and in light of Plaintiff's counsel's dilatory conduct in purposely not addressing this previously, Defendants respectfully request that the Court deny any request on behalf of Plaintiff for inmate medical records.

### D.  Defendants failed to produce all Inmate Grievances

This is another disingenuous argument.

Ms. Mahoney has spoken to every person she could reasonably identify who might have information on this issue. To date, these documents have not been found. She does not know where they are, nor has she identified anyone who does know where they are, or if they exist.

Moreover, her efforts to investigate this issue have gone far above and beyond what could reasonably considered as a due and diligent search. She spoke with every prison official she could identify who might know of the whereabouts of the documents. Then, at Plaintiff's counsel's request, she searched for and located a former employee, Mark Smida, and interviewed him, which she was not required to do. He did not know where these documents are.

Further, Ms. Mahoney went to the extra trouble of producing additional documents (inmate grievance logs and log book) which 1) were NOT Ordered by the Court; and 2) are merely cumulative, not relevant and not reasonably calculated to lead to the discovery of admissible evidence. Although Ms. Mahoney did not have to do so, in an attempt to minimize conflict and appease Plaintiff's counsel's relentless demands, she copied and produced these items without objection, and then proceeded to review these materials with Mr. Howard in her office in an attempt to determine whether they contained any substantive information which could be of assistance to Mr. Howard.

Plaintiff's counsel complains that they have received incomplete information. They have received all of the information that Defendants have been able to locate in good faith. They have received over 800 inmate grievances. Further, Plaintiff's counsel did not avail themselves of the opportunity afforded by the Court to take depositions on this issue. Instead, they harassed Ms. Mahoney with letters demanding additional information and documents. Ms. Mahoney did her best to answer their questions and produce the items they sought, but they remain dissatisfied. There is simply nothing more Ms. Mahoney could do to locate and produce the additional records.

**E.     Defendants have not provided information regarding relevant witnesses**

Again, Ms. Mahoney did everything possible to obtain and provide the contact information regarding the 34 witnesses. She made innumerable contacts with prison officials to try to locate this information. She performed her own internet search for addresses of individuals whom the prison could not identify. She continually updated Plaintiff's counsel on her progress. When Mr. Howard asked Ms. Mahoney if she compared the inmates names with

the weekend inmate roster (which is something he could have done himself), she did that with him.  She even contacted Deputy Warden Rick DiAntoniis to discuss this issue and permitted Mr. Howard to remain in the room with her while she spoke with the Deputy Warden.  She exhausted every avenue she could possibly think of to obtain this information, and she was able to produce the majority of addresses requested.

It is noteworthy that one of the individuals on Plaintiff's list, Bey Griffiths, is really Peg Griffiths.  Plaintiff's counsel provided the incorrect name and then blamed Ms. Mahoney for being unable to locate an address for this individual.

To state that Ms. Mahoney gave "misleading" information regarding the last known addresses of inmates is completely unfair.  She reported the information to Plaintiff's counsel on an up-to-the-minute basis as she received it from the prison.  Specifically, she did not purposely "mislead" Plaintiff's counsel by telling them that Inmate Jerry Gallagher was incarcerated when he was really on fugitive status.  In fact, she explained to Plaintiff's counsel in detail why the prison made the error.  The fact that incorrect information regarding Mr. Gallagher was corrected by Ms. Mahoney does not mean that she "misled" Plaintiff's counsel.  She promptly correctly misinformation when it was brought to her attention.   Plaintiff's counsel is again acting in bad faith and making disingenuous arguments about Ms. Mahoney in an attempt to manufacture reasons for the court to impose sanctions.

### F. **Defendants continue to obstruct Plaintiff's attempt to complete discovery**

Of all of Plaintiff's counsel's allegations, this is the most blatantly outrageous and false.

By engaging in deception to Ms. Mahoney, Plaintiff's counsel has successfully circumvented the intention of the Court that they be required to come to the offices of DiOrio &

Sereni to review files.

      Mr. Howard initially informed Ms. Mahoney, both in writing and over the course of several conversations, that he was planning to bring a courier to her office with him to pick up the files which he wanted to have copied. In writing, he informed her that he was planning to use a courier company called G Force come to her firm to pick up files and transport them for copying by a company named "Printer's Place." Ms. Mahoney was completely amenable to this. Because the Court imposed the costs of photocopying on the Plaintiff, she did not want to interfere with counsel's photocopying plans.

      On Wednesday, September 10, 2003, Mr. Howard again informed Ms. Mahoney that he would be accompanying a courier to her offices on Friday September 12, 2003 to remove files for photocopying. He led her to believe that he would be taking only certain parts of certain files for copying. For example, he specifically stated that he did not believe that he would want to take very much information from the <u>Opendak</u> file for copying. Ms. Mahoney indicated that his plan was acceptable to her. Then, on Friday September 12, 2003, Mr. Howard spoke to Ms. Mahoney via telephone and informed her that he would not be accompanying the courier, but that the courier would be taking all of the files Plaintiff's counsel had reviewed thus far (33 files). Again, this was acceptable to Ms. Mahoney, although she thought it was odd that Mr. Howard was going to copy all parts of all files, which was not what he had indicated previously. The courier[1] was scheduled to arrive at 4:00 p.m., but actually arrived at approximately 3:15 p.m. When he arrived, Ms. Mahoney asked him where he was taking the files. He replied that he did not know where he was taking them, and his instructions were to contact his dispatcher for a

---

      [1]Incidentally, the courier, Chuck Cahilly, is a retired Camden police officer.

destination *after* he left her firm.  Ms. Mahoney informed him that she would not release her files without knowing where they were being taken.  The courier spoke with the dispatcher who informed him that he was to bring the files to 1319 South Broad Street, plaintiff's counsel's office!  Ms. Mahoney was flabbergasted, and attempted to reach Mr. Howard and Mr. Rollins, calling both their office and Mr. Rollins cell phone to find out why the files were being taken to their offices, instead of to the copy service.

Ms. Mahoney was not able to reach either Mr. Rollins or Mr. Howard.  The dispatcher attempted to reach them at an "alternative" phone number, but was also unsuccessful.  At this point the courier expressed his reluctance to take the files, for fear that there would be no one present at the destination to receive them.  The dispatcher assured the courier in Ms. Mahoney's presence that he was told that someone would be present at Plaintiff's counsel's office when the courier arrived with the files.

Ms. Mahoney advised co-counsel of the situation and discussed whether to release the files directly to the custody of Plaintiff's counsel, something that Mr. Howard never discussed with her.  Ultimately, after consulting with co-counsel, Ms. Mahoney released the files to the courier, who later called Ms. Mahoney and confirmed that he delivered them to Plaintiff's counsel at approximately 5:15 p.m.

On Monday, September 15, 2003, Ms. Mahoney telephoned Mr. Howard to find out why he had taken possession of her files instead of having his courier bring them to a copy center as he previously represented to her, at which point he became irate, accusatory, and verbally abusive, culminating with Mr. Howard slamming the phone down and discontinuing the telephone conversation without telling Ms. Mahoney why he took possession of her files, where

they were going to be copied, or when she could expect to have them back.

Plaintiff's counsel, and in particular, Mr. Howard, took advantage of Ms. Mahoney's good will to take possession of the files from her office to his office, which is precisely what the Court told him he could not do on July 25, 2003. On July 25, 2003, he specifically requested that he not have to come to Media to review the files, which the Court rejected. That this was Plaintiff's counsel's scheme is evident in the fact that as of the date of this writing (September 30, 2003 and 18 days later), Plaintiff's counsel has not returned any of the files to Ms. Mahoney, except for one. Ms. Mahoney does not know where the files are or when she can expect to receive them back. Some of these files are active cases which Ms. Mahoney is actively defending. This is tantamount to wrongful conversion of property.

This conduct demonstrates bad faith on the part of Plaintiff's counsel and should not be tolerated by the Court. Defendants request that Plaintiff's counsel immediately return all files to Defendants and that Plaintiff's right to continue to review and photocopy files to be terminated in light of this unscrupulous conduct.

**III    CONCLUSION**

Plaintiff's allegations of unprofessional conduct on the part of defense counsel is incredulous. Ms. Mahoney has worked tirelessly to comply with the Court's Order and to complete the monumental task of producing these files in the time frame prescribed by the Court. In addition, she permitted Plaintiff's counsel access to the files on certain weekends, when she came in to her office to allow them to review files. She also offered to provide Plaintiff's counsel access to the files in the evenings, although they did not take her up on this offer. She also provided Plaintiff's counsel with her private cell phone number so that they could have

access to her at their will. She bent over backwards to assist them and to respond to their subsequent demands for information which exceeded the scope of the Court's Order. Plaintiff's counsel is well aware of this as evidenced by Mr. Rollins' repeated statements to Ms. Mahoney throughout the month of August that she needed to engage extra help with this project and that she was not going to be able to do all of this herself.

Further, Ms. Mahoney communicated with Plaintiff's counsel in a professional and courteous manner at all times, all the while enduring Plaintiff's counsel's (particularly Mr. Howard and his associate) insults to her, her firm and her co-counsel, and yelling at her, which forced her to cease verbal communications with Mr. Howard. Further, Mr. Howard's conduct has caused Ms. Mahoney to conclude that she will no longer be able to permit Mr. Howard access to the files during non-business hours.

Moreover, to date, Plaintiff's counsel have not demonstrated due diligence in reviewing the files. To date, there are approximately 66 files which Plaintiff's counsel has not yet begun to review. Therefore, it is unbelievable that they could possibly argue that their discovery efforts have been hindered by Ms. Mahoney. They themselves have not exercised diligence in pursuing the discovery they claim they so desperately need.

Defendants and their attorneys have attempted to comply with the Court's Order of July 29, 2003 in good faith, and sanctions are not deserved or appropriate. Moreover, Plaintiff's counsel has used the Court's Order of July 29, 2003 as a tool to harass defense counsel which has made a very challenging document production that much more difficult. It is most unfortunate that Plaintiff's counsel has chosen this course of conduct, and Defendants and their attorneys implore the Court to put a stop to it.

                Respectfully submitted:

                **DIORIO AND SERENI, LLP**

**Date:** _____        **BY:** _____

                **ROBERT M. DIORIO**
                I.D. No.: 17838


_____

**KATHLEEN E. MAHONEY**
I.D. No.: 77873
Front & Plum Streets
Media, Pa.  19063
(610) 565-5700
Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

  We, Robert M. DiOrio, Esquire, and Kathleen E. Mahoney, Esquire hereby certify that a true and correct copy of the foregoing Reply to Plaintiff's Objections to Certificate of Compliance with Court's Order of July 29, 2003 was served on the date below by facsimile and first class, U.S. mail, postage pre-paid, upon the following:

    Derrick Howard, Esquire
    John Rollins, Esquire
    **HOWARD ROLLINS, LLC**
    1319 South Broad Street
    Philadelphia, PA 19147


    David F. White, Esquire
    Dennis Herbert, Esquire
    **KELLY, McLAUGHLIN, & FOSTER**
    620 W. Germantown Pike
    Suite 350
    Plymouth Meeting, PA 19462


    _____
    **ROBERT M. DIORIO, ESQUIRE**
    Pa I.D. No. 17838
    **KATHLEEN E. MAHONEY**
    Pa I.D. No. 77873
    DiOrio & Sereni, L.L.P.
    Front & Plum Streets
    P.O. Box 1789
    Media, PA 19063
    (610) 565-5700
    (610) 891-0652 (fax)


**Date:**_____