IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| | : | |
| vs | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

## ORDER

      **AND NOW,** this _____ day of April, 2004, upon consideration of Defendants Wackenhut Corrections Corporation and the Wackenhut Corporations Motion for Summary Judgment, it is hereby **ORDERED** and **DECREED** that Defendants' Motion is granted.

                                                       BY THE COURT

                                                       _____
                                                       BAYLSON, MICHAEL M.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| | : | |
| vs | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

**DEFENDANTS WACKENHUT CORRECTIONS CORPORATION, THE WACKENHUT CORPORATION, JAMES JANECK, DEBORAH PERRETTA, MARGARET CARRILLO, M.D., DR. FREDERICK, DR. HOLLAND HULL, MERIAN BYRD AND CAROL SNELL'S MOTION FOR SUMMARY JUDGMENT**

Defendant Wackenhut Corrections Corporation (hereinafter referred to as "Wackenhut"), by and through their attorneys, Kelly, McLaughlin, Foster, Bracaglia, Daly, Trabucco and White, LLP, hereby moves for Summary Judgment as to all claims alleged by Plaintiff Arthur Jackson. Moving Defendants aver the following:

353476-1

1.      Plaintiff, Arthur Jackson was convicted of driving under the influence in the fall of 1999 and was sentenced to thirty days at the George W. Hill Correctional Facility, to be served on fifteen consecutive weekends between February and May, 2000. The "weekender" program was developed by Delaware County and sanctioned by the Commonwealth of Pennsylvania to allow certain classes of offenders to retain their employment while serving their sentence.

2.      The "weekender" program, by necessity, employed a number of modifications to the regular prison rules. One of these modifications concerned prescription medications of inmates. While the prison infirmary uses an outside pharmacy and stocks the medications for the inmates in the regular prison, "weekenders" are instructed to arrive with any required medications each weekend, along with a copy of their prescriptions or a doctor's note establishing that the medications are legitimate.

3.      A weekend inmate must arrive at the prison at 6:00 P.M. on Friday night and is released at 6:00 P.M. on Sunday. During the week, they are considered "furloughed" and are free to do as they wish. The prison system has no control over these individuals from 6:00 P.M. Sunday to 6:00 P.M. Friday, although these individuals, especially the DUI offenders, are prohibited from taking illicit drugs and drinking alcohol during this furloughed time.

4.      Mr. Jackson, on at least two occasions, presented himself at the prison in an obviously inebriated state. (See Exhibit "A" – Prison Housing database, 4/16/00 and 4/22/00; Exhibit "B" – Deposition Transcript of former corrections officer Sean Gardner, p. 10-12). On these occasions, he was immediately sent up to the main prison to serve his weekend.

5. Mr. Jackson admits that he was actively drinking during the months that he was serving his weekends. (See Exhibit "C" – Deposition transcript of Arthur Jackson, III, part II, pp. 44-45)

6. Mr. Jackson was a chronic alcoholic. This particular sentence was due to a conviction for driving under the influence. In addition to his alcoholism, the Plaintiff also suffered from hypertension, diabetes, a previous stroke, acute pancreatitis, alcoholic liver disease, sepsis, osteomyelitis, hyperglycemia and back problems.

7. During his incarceration Mr. Jackson arrived with prescriptions for Insulin, Klonopin, Effexor, Trazadone, (See Exhibit "D" – Medication Administration Records). Iinitially, Mr. Jackson would bring his medications and they would be administered by the infirmary medical personnel. However, on the occasions he was perceived to be intoxicated, the medical staff would administer Librium as an aid to alcohol withdrawal instead of his other medications which were contraindicated when combined with alcohol. (See Exhibit "D" – Medication Administration Records).

8. Mr. Jackson unilaterally decided he was not going to bring his medications to the prison, knowing full well that, as a "weekender", the policy was to bring any medications needed to the prison when reporting. (See Exhibit "F" – Deposition Transcript of Arthur Jackson, part I, p. 54)

9. On the weekend of his accident, May 26-28, 2000, Mr. Jackson arrived at the prison on Friday at 6:00 P.M. without his medications.

10. He was not given any other medication during his forty-eight hour stay, as he did not bring any to the prison as required.

11. Sometime prior to 6:00 P.M. on Sunday, May 28, 2000, the weekend prisoners were gathered to be released. They were waiting for the bus to take them from the barracks to the front gate. Mr. Jackson's name was called by the corrections officer, who heard a "yelp" and was

353476-1

then summoned over by some inmates. Mr. Jackson had apparently passed out, lying on the floor, possibly experiencing a seizure.

12.     Mr. Jackson was taken to Crozer-Chester Hospital emergency room and not accompanied by any of the corrections officers, as he was technically released on furlough for the week at the time of his fall.

13.     At Crozer, Mr. Jackson was examined and blood tests were performed. He was initially diagnosed with a subdural hematoma, caused by hitting his head when he passed out. The blood tests revealed a blood sugar count of 461, no traces of benzodiazapene (Klonopin), and a dangerously low level of sodium. (See Exhibit "S" – Crozer Chester Emergency Room Records, blood tests taken on 5/28/00).

14.     Mr. Jackson was later diagnosed at Crozer with hyponatremia, a condition resulting from low sodium levels. He informed some of the medical staff at Crozer that he had been "flushing out his system" by drinking gallons of water. Low sodium hyponatremia can be caused by drinking excessive amounts of water (See Exhibit I – internet article by Tom Brody and Exhibit "J" – Initial report by Dr. James Menapace (Defense Expert) dated 5/27/03) In addition, Hyponatremia can cause seizures (See Exhibit "I" – internet article by Tom Brody)

15.     As Mr. Jackson had no trace of benzodiazapenes (Klonopin) in his system and this drug has a lengthy half-life. It is apparent that no "sudden withdrawal" of this medication was the cause of Mr. Jackson passing out. (See Exhibit "J" – Initial report of Dr. James Menapace dated 5/27/03; Exhibit "K", Deposition of Dr. Victoria Gessner, p. 110-111).

16.     The blood sugar level of 461 determined in the emergency room would not have caused Mr. Jackson's accident, as this level is fairly high and it is a low blood sugar level that would cause fainting and seizures. (See Exhibit "J" – Report of Dr. James Menapace dated 5/27/03).

353476-1

17.     Mr. Jackson, in his complaint, has alleged violations of his civil rights under 42 U.S.C. § 1983, a breach of the duty to provide reasonable health care and reasonable access to health care, negligence, intentional infliction of emotional distress, and a count under the "state created danger" theory expressed in Kneipp v. Tedder, 95 F. 3d 1199 (3rd Cir. 1996).

18.     To state a claim under 42 U.S.C. § 1983 for lack of adequate medical care, a prisoner must depict conduct so cruel or unusual as to approach a violation of the Eighth Amendment's prohibition of such punishment in order that a colorable constitutional claim is presented. Gittlemaker v. Prasse, 428 F.2d 1 (3rd Cir., 1970).

19.     The prisoner must show that prison officials were deliberately indifferent to his serious medical needs, and to establish deliberate indifference the inmate must show that the Defendants knew of, yet deliberately disregarded, an excessive risk to his health. U.S.C.A. Constitutional Amendment 8; 42 U.S.C.A. § 1983; Kessler v. King, 130 F.3d 1309 (8th Cir. 1997).

20.     By his own admission, **Mr. Jackson stopped bringing his medications to the prison on his own accord.** (See Exhibit "E" – Deposition transcript of Arthur Jackson, Part I, p. 54.11). He admits that he was told to bring his medications in, but claims that one weekend after he brought them he was informed by one of the medical staff that they had either "lost" his medication or that they thought that he had been released so they "threw away" his medication. (See Exhibit "E" – Deposition transcript of Arthur Jackson, Part I, pp. 53-54). There has been absolutely no substantiation of such a claim.

21.     Mr. Jackson's decision to stop bringing his medications on subsequent weekends, and notably the weekend of his accident, was the reason he did not receive his medications on those weekends. Mr. Jackson deprived himself of his medications.

22.     Considering all of the facts gathered throughout the discovery process, Plaintiff's have failed to prove that Mr. Jackson's fall was due, in any way, to a lack of medical care by the prison employees.

23.     Plaintiff fails, as a matter of law, to state a claim for a violation of his constitutional rights under 42 U.S.C. § 1983.

24.     There have been no facts establishing deliberate indifference, no facts supporting that any action or omission on the part of Defendants' was the proximate cause of Plaintiff's injuries, and no facts supporting that Defendants' breached a duty owed to Plaintiff.

25.     Moving Defendants', with the burden to prove that Arthur Jackson was contributory negligent to such an extent that he is precluded from recovering, have introduced specific and irrefutable facts on the record that, even if Mr. Jackson's allegations are taken as true, establish a level of comparative negligence that exceeds the minimum fifty percent necessary for Mr. Jackson to recover any damages under Pennsylvania law.

26.     No specific facts have been advanced by Plaintiff regarding any of the numerous individuals named as Defendants. Claims against Wackenhut employees James Janecka, Deborah Perretta, Margaret Carillo, M.D., Dr. Frederick, Dr. Holland Hull, Meriam Byrd and Carol Snell must be dismissed as no evidence has been presented by Plaintiff's that these individuals breached a duty of care to Mr. Jackson that was the proximate cause of his injuries, and, certainly, no substantial evidence has been submitted that these individuals violated Mr. Jackson's Eighth Amendment constitutional rights.

27.     As the doctrine of respondent superior does not apply to § 1983 actions, <u>Little v. Lycoming County</u>, 912 F. Supp. 809 (1996). Wackenhut Corrections Corporation, The Wackenhut Corporation, Delaware County, the prison itself and its Board can not be liable

353476-1

absent proof that these entities had subjective knowledge of a denial of medication and serious medical needs.

28.  There has been no evidence presented regarding any specific policy or custom that contributed to Plaintiff's injuries.

29.  There has been no expert testimony regarding standards of practice in a prison infirmary situation advanced by Plaintiff.

30.  As to the state tort claims, Moving Defendants are immune pursuant to 42 Pa. C.S.A. § 8541 et. seq. as state actors performing an essential government function, the immunities afforded by § 8541 apply to Moving Defendants and the individual Defendants acting as their agents.

WHEREFORE, moving Defendants Wackenhut Corrections Corporation, the Wackenhut Corporation, James Janecka, Deborah Perretta, Margaret Carrillo, M.D., Dr. Frederick, Dr. Holland Hull, Meriam Byrd and Carol Snell respectfully request that this Honorable Court grant

353476-1

summary judgment as to all claims of Plaintiff Arthur Jackson against them, including violation of Civil Rights pursuant to 42 U.S.C. §1983, negligence and emotional distress.

          Respectively submitted,

          **KELLY, MCLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: /s/ Dennis P. Herbert
    DAVID F. WHITE, ESQUIRE
    Attorney I.D. No. 55738
    DENNIS P. HERBERT, ESQUIRE
    Attorney I.D. No. 65847
    Kelly, McLaughlin, Foster, Bracaglia,
    Daly, Trabucco & White, LLP
    620 W. Germantown Pike, Suite 350
    Plymouth Meeting, PA 19462
    Attorneys for Defendants,
    Wackenhut Corrections Corporation,
    The Wackenhut Corporation
    and James Janecka, Deborah Perretta,
    Margaret Carrillo, M.D., Dr. Frederick,
    Dr. Holland Hull, Meriam Byrd, and Carol Snell

Dated: March 18, 2004