IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| vs. | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : | NO. 02-3230 |

**<u>ORDER</u>**

**AND NOW**, this           day of April      , 2004, upon consideration of Defendants Wackenhut Corrections Corporation, the Wackenhut Corporation, James Janecka, Deborah Perretta, Margaret Carrillo, M.D., Dr. Frederick, Dr. Holland Hull, Meriam Byrd and Carol Snell's Motion to Exclude the Proffered Testimony of Lee M. Silverman, M.D. and Daniel J. Gzesh, M.D. Pursuant to F.R.E. 702 as unreliable, it is hereby **ORDERED** and **DECREED** that Defendant's Motion is granted.

**BY THE COURT**

_____
Judge Michael M. Baylson

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| | : | |
| vs | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

**MOTION IN LIMINE OF DEFENDANT WACKENHUT CORRECTIONS CORPORATION TO EXCLUDE THE PROFFERED TESTIMONY OF LEE M. SILVERMAN, M.D. AND DANIEL J. GZESH, M.D. UNDER F.R.E. 702 AS UNRELIABLE**

Defendant, Wackenhut Corrections Corporation hereby moves this honorable Court to exclude the testimony of Lee M. Silverman, M.D. and Daniel J. Gzesh, M.D. under F.R.E. 702 as unreliable, and in support thereof, states as follows:

1. Plaintiff alleges that his fall at the Delaware County Prison on May 28, 2000 resulted from deprivation by prison officials of his medications, including Klonopin and insulin.

2.      Plaintiff further alleges that he now suffers from cognitive deficits as a direct result of that fall, in which he sustained a subdural hematoma and a subarachnoid hemorrhage.

3.      In support of Plaintiff's allegations, he offers the testimony of Lee M. Silverman, M.D., his treating psychiatrist since 1996, who opines in three reports addressed to counsel that the May 28, 2000 fall was the result of the deprivation of insulin and Klonopin, and that Plaintiff now suffers from permanent cognitive deficits as a result of the fall.

4.      Federal Rule of Evidence 702 prohibits submission of unreliable expert testimony to the jury for consideration. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 590, 113 S.Ct. 2786, 2795  (U.S. 1993).

5.      Dr. Silverman has formed his opinion on causation without consideration of any objective evidence inconsistent with it, including admissions of his patient to his other treating physicians, blood test results, sworn testimony of witnesses and his own patient, prison medical records, a prior social security disability proceeding in which he participated and further makes no citation or reference to any objective evidence in support of his conclusions.

6.      For instance, in forming his opinion that the cause of Plaintiff's fall was a result a sudden deprivation of Klonopin (a benzodiazapene), he ignores the results of blood tests conducted the day of Plaintiff's fall at Crozer-Chester Medical Center which fail to show the presence of any benzodiazapenes in his system, although traces should be present at least several days, and up to 5-6 weeks after cessation, depending on whether his use was acute or chronic.  (Exhibit B, pp 3-5, Exhibit C, pp 23-24).

7.      Plaintiff had been regularly prescribed Klonopin by Dr. Silverman since at least 1996. (Exhibit H)

8.      Dr. Silverman also ignores the admission of his patient to another of his treating physicians, Dr. Gzesh, that plaintiff had unilaterally discontinued his Klonopin several days prior

to the May 27-28, 2000 weekend admission, although Dr. Gzesh mentions the admission in a letter addressed to Dr. Silverman (Exhibit A)

9. A Court must conduct a threefold inquiry before permitting expert testimony. It must: come from a qualified expert witness, be based on reliable methods, and "fit" the facts of the case. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 743 (3d Cir. 1994)

10. Dr. Silverman's testimony fails to meaningfully address alternative theories of causation relative to Plaintiff's fall at the prison, most obviously Plaintiff's alcoholism.

11. While not required to completely rule out all alternative causes, Daubert requires at least that the expert meaningfully address the issue of alternate causes. Viterbo v. Dow Chemical Co., 826 F.2d 420 (5th Cir. 1987).

12. Only one of his three litigation reports even alludes to the possibility that the fall might have another cause: In his 1/21/03 report to Mr. Rollins, he appears to rule out alcohol withdrawal by taking as "a given" that Plaintiff was neither intoxicated nor drinking regularly during this time. (Exhibit D). None of his other reports even tangentially touch the issue. (Exhibits E & F).

13. Dr. Silverman's expert opinion on causation is heavily based upon unreliable data, e.g. inaccurate and inconsistent statements of his patient to him made regarding the degree and active nature of his alcoholism, despite his documented awareness of and prior commentary upon Plaintiff's unreliability as a historian, especially in regard to his drinking.

14. Dr. Silverman is explicitly basing his opinion which attributes the cause of the fall to deprivation of Klonopin and/or insulin upon a "belief" that Plaintiff was "completely sober in regards to alcohol over the past several years." (Exhibit D).

15. Dr. Silverman's "belief" in his patient's sobriety persists despite his own office notes documenting Plaintiff's binge drinking and prior commentary upon Plaintiff's unreliability as a

3

historian in that regard, sworn testimony of the plaintiff himself, sworn testimony of a prison guard prison medication records and his videotaped admission to Dr. Marc Sageman in the presence of his attorney.

16.  For instance, in his own office note of 3/2/99, he notes Plaintiff's "drinking binge" (Exhibit J).

17.  In his own office note of 11/4/99, he notes "Pt had drinking binge ->DUI" (Exhibit K).

18.  In his own office note of 1/28/00, he notes "+ETOH today, 'a 32 oz' beer … mild alcohol intoxication" (Exhibit I).

19.  In his own office note of 3/22/00, he notes "I spoke with Dr. Ebba about patient-we agreed that suspicions about excessive alcohol use justified.  Pt. Denies ETOH. … Stressed need for sobriety, Pt. Agrees"  (Exhibit M).

20.  In his own office note of 10/10/00, he notes "s/p alcohol relapse".  (Exhibit L).

21.  Prison medical records indicate that Plaintiff was given Librium for alcohol withdrawal as well as his Klonopin on the weekend of May 6, 2000  (Exhibit N).

22.  Defendant Miriam Byrd testified under oath that a prison progress note of May 6, 2000 indicated that Plaintiff felt he had an alcohol problem, that his last drink was the previous day, and that his uncontrollable shaking was due to gastroenteritis and drinking.  (Exhibits O, P)

23.  Witness Sean Gardner (a prison guard) testified under oath that Plaintiff was "slobbering, … falling down drunk" nearly every weekend at the prison, except the weekend of the incident. (Exhibit Q).

24.  Plaintiff himself testified that he was drinking during the week between weekend prison admissions.  (Exhibit G).

25.  Plaintiff also admitted to Dr. Marc Sageman, (in the presence of his own attorney) who videotaped the session, that he drank during the period that he was serving the prison sentence. (See Exhibit C, page 5).

*26.*  Not a single one of the above pieces of evidence, all presumably known to Dr. Silverman (especially his own notes) are even mentioned much less discussed or reconciled with his "belief" in his "completely sober" patient in any of his three expert reports addressed to counsel. (Exhibits D-F)

27.  Expert testimony not accompanied by sufficient factual foundation cannot be submitted to the jury for consideration as it is inadmissible under F.R.E. 702. <u>Boucher v. United States Suzuki Motor Corp.</u>, 73 F.3d 18, 21-22 (2d Cir. 1996). (approving exclusion of testimony based on conjecture and faulty assumptions). Federal courts have not hesitated to exclude an expert where his testimony is not supported by sufficient evidence.  *See e.g.* <u>Concord Boat Corp v. Brunswick Corp</u>, 207 F.3d 1039, 1056 (8th Cir. 2000) (Exclusion warranted under Daubert/Khumho standard where expert had not considered all relevant facts in relevant market when performing market share analysis.

28.  Dr. Silverman himself makes at least two patent misstatements of objective fact regarding the term of his own treatment of the plaintiff and the extent of his patient's alcoholism.

29.  Dr. Silverman states in his 1/21/03 report to Mr. Rollins that Plaintiff had never appeared in his office intoxicated (Exhibit E).

30.  His own office notes document that this is an untrue statement.  "+ETOH today 'a 32 oz' beer … mildly intoxicated" (Exhibit I).

31.  He states in two of his three reports to counsel that he began seeing Plaintiff in August, 1998, and further responded to a subpoena from defendants for his office notes with notes going back to that date  (Exhibits D, E).  However, a subpoena to the Social Security Administration

5

produced a "transcription of telerecorded message" dated 10/16/96 from Dr. Silverman indicating that he had been treating the Plaintiff since August, 1996 (two years prior to August 1998). (Exhibit H).

32. Patently false statements of objective fact made by the expert in the litigation process are additional Daubert grounds for excluding the testimony as unreliable. Pearson v. Young, 2002 U.S. Dist. Lexis 26263 (W.D. Ok. 2002).

33. The false statements are grounds for exclusion without regard to whether they are knowingly made; the touchstone is their indication of lack of "intellectual rigor" which indicates the unreliability of their maker, even without a finding that they are knowingly false. Pearson, *supra*.

34. In that transcribed message, Dr. Silverman recounts first his doubts regarding his patient's truthfulness and finds him to be an unreliable historian: "Please note that he was an inconsistent historian and at times it was difficult to accurately gauge the truthfulness of what he was telling me" (Exhibit H).

35. Later in the transcription, Dr. Silverman also notes that "Mr. Jackson also admitted although minimized an extensive history of alcohol abuse" (Exhibit H).

36. All of Dr. Silverman's conclusions regarding the causation of the incident and the cause of the alleged cognitive deficits suffered by the Plaintiff subsequent to the incident are blatantly led by Plaintiff's counsel and further ignore substantially similar complaints made by the plaintiff in his 1996 disability application, a process in which the doctor participated.

37. In two of his three reports to counsel, those of January 21, 2003 and February 2, 2004, Dr. Silverman articulates his opinions in the form of answers to blatantly leading questions posed to him by Plaintiff's counsel, thus further tainting their reliability and adding the additional factor of bias.

38. For instance, in his 1/21/03 report, he writes:

   Now in regards to your questions: …. 2) Do you agree that the injuries (subdural hematoma with subarachnoid hemorrhage) for which you have been treating him since May 29, 2000 were caused by the deprivation of physician prescribed medications (e.g. insulin, Klonopin, etc.) while Mr. Jackson was incarcerated in Delaware County Prison?  From review of records from his medical hospitalization I believe at Crozer-Chester Medical Center immediately following the event and Mr. Jackson [sic] recollection, it appears to me that he had a seizure and the seizure led to the closed head injury.  It is my understanding that Mr. Jackson was not given his psychiatric medications or his insulin.  Given that Mr. Jackson was not intoxicated at the time nor was he drinking on a regular [sic] it is my belief that the seizure was more likely due to abrupt cessation of the Klonopin and lack of insulin.  (Exhibit D)

39. He also writes there:
   8) Do you believe that Mr. Jackson has sustained any permanent impairment to the usefulness of his brain with respect to memory loss (or other parts of his body injuries due to the May 28, 2000 accident, if so please indicate the nature, extent of such permanent impairment and as a consequence with respect to Mr. Jackson's healthcare requirements and activities of daily living?  I stated previously I believe that Mr. Jackson who when I first me him in spite of his depression, anxiety, chronic pain and intermittent alcohol use was intelligent, articulate and animated.  There has been a marked change in his personality and also a marked change in his attention, his ability to initiate and complete tasks and his memory.  There's also been some ataxia although I have not formally addressed its extent.  Since the injury occurred Mr. Jackson has been largely reclusive to his home and has been markedly dependent on his common-law wife.  Activities that Mr. Jackson had been involved in when I first met him in spite of his chronic pain and depression, which included artistic,[sic] endeavors and use of the computer and the internet have largely been abandoned by him since the injury occurred.  (Exhibit D).

40. In addition to being led to medical conclusions, he receives the benefit of being led to legal conclusions as well in his February 2, 2004 report addressed to Mr. Rollins:

   "You asked me to address the following questions:     1. Did the defendant in this case exhibit a policy of deliberate indifference to the serious medical and psychological needs of plaintiff, Arthur Jackson?  My opinion is affirmative…3. Was the deliberate indifference of defendants a substantial factor in causing this injury to plaintiff Jackson? Again my opinion is affirmative."  (Exhibit F).

41. This seldom seen explicit and unapologetic involvement of counsel in shaping, if not forming an expert's opinion testimony is further indicia of its unreliability and even bias for obvious reasons.

42. Noticeably absent in the 1/21/03 report containing the opinion regarding causation of his patient's claimed cognitive deficits quoted in paragraph 36 above, and indeed nowhere present in any of his reports is a reference to, much less a full discussion of the 1996 disability application to the Social Security Administration in which the Doctor participated as documented by above referenced 10/16/96 "transcription of telerecorded message" (Exhibit H).

43. The absence of any reference whatsoever to the 1996 disability application is significant inasmuch as Plaintiff made substantially similar claims of cognitive deficits in that proceeding, a fact which critically impacts on the reliability of Dr. Silverman's opinion that his present alleged cognitive deficits are a result of the May 28, 2000 fall in Delaware County Prison.

44. In connection with that proceeding, on 9/22/96 specifically (less than a month prior to Dr. Silverman's 10/16/96 transcribed testimony, and during his treatment with him), Arthur Jackson completed a "daily activities questionnaire" in his own handwriting and signed it (Exhibit R).

45. In response to the questionnaire, Mr. Jackson variously reported in support of his disability claim that he needed reminding to change his clothes daily, and to bathe, that he cannot do his own shopping, and relies on his neighbors to do it, cannot take public transportation because he will get lost due to a lack of concentration, avoids appearing in public due to panic attacks, cannot complete projects or activities such as reading a book or puzzle, because he forgets where he was in the project or loses interest. He further states that he cannot get out of bed on his own, and cannot go to appointments unless someone puts them on the calendar form him, cannot make decisions on his own, *cannot remember if he has taken his medication*, has to be reminded to change his clothes and to take showers, and cannot clean or cook (besides microwave) because he cannot stay focused (Exhibit R).

46. An expert's testimony must "fit" the facts of the case to pass Daubert muster. In re Paoli R.R. Yard PCB Litigation, 35 F.3d 717, 743 (3d Cir. 1994)

8

47. Daubert also requires that an expert be qualified to offer his opinion, i.e. that he is in fact an expert in his relevant field.  In re Paoli R.R. Yard PCB Litigation, *supra*

48. However, Plaintiffs have never provided Dr. Silverman's curriculum vitae testimony, so it is not even a given that he is a medical doctor, much less that he has any practical experience outside of his principal practice area of psychiatry upon which to base his "expert" opinion on the medical cause of Plaintiff's fall at the prison on May 28, 2000, or to support his barely explained dismissal of the alternative possibility that the fall was due to plaintiff's withdrawal from alcohol  (Exhibit D).  Dr. Silverman or Dr. Gzesh were never produced for depositions which were scheduled for March 5, 2004, and a Motion to Preclude their testimony and opinion has been filed.

49. For all of the above reasons, Daubert and its progeny require the exclusion of Dr. Silverman's testimony under F.R.E. 702 as unreliable.

50. Dr Gzesh also offers the opinion that the fall was a result of the deprivation of clonzapam (another name for Klonopin), and in the same report further opines that Plaintiff's cognitive deficits are a result of the fall.  (Exhibit S).

51. Like Dr. Silverman, Dr. Gzesh fails to address or even consider the possibility that the fall was the result of withdrawal from alcohol.  Indeed, he does not mention Plaintiff's drinking or his alcoholism anywhere in his report.  (Exhibit S).

52. Like Dr. Silverman, Dr. Gzesh  also ignores the results of the blood study done at Crozer-Chester Medical Center immediately after the fall in which there was no trace of benzodiazapenes in Plaintiff's system, a condition completely inconsistent with Dr. Gzesh's stated opinion.

53. Like Dr. Silverman, Dr. Gzesh ignores the records of Plaintiff's 1996 Social Security Disability application in which Plaitniff makes claims for substantially similar cognitive

9

disabilities as those he is claiming now, and which Dr. Gzesh is opining are a direct result of the fall. (Exhibits R;S.

54. Therefore, like the opinions of Dr. Silverman, Daubert and its progeny require the exclusion of Dr. Gzesh's testimony under F.R.E. 702 as unreliable.

WHEREFORE, Moving Defendants Wackenhut Corrections Corporation, The Wackenhut Corporation, James Janecka, Deborah Perretta, Margaret Carillo, M.D., Dr. Frederick, Dr. Holland Hull, Meriam Byrd and Carol Snell respectfully request this Honorable Court grant Moving Defendant's Motion to Exclude the Proffered Testimony of Lee M. Silverman, M.D. and Daniel J. Gzesh, M.D. Pursuant to F.R.E. 702 as unreliable.

Respectively submitted,

**KELLY, MCLAUGHLIN, FOSTER, BRACAGLIA, DALY, TRABUCCO & WHITE, LLP**

By: /s/ David F. White
DAVID F. WHITE, ESQUIRE
Attorney I.D. No. 55738
Timothy J. Hartigan, ESQUIRE
Attorney I.D. No. 66231
Kelly, McLaughlin, Foster, Bracaglia
Daly, Trabucco & White, LLP
620 W. Germantown Pike, Suite 350
Plymouth Meeting, PA 19462
Attorneys for Defendants,
Wackenhut Corrections Corporation,
The Wackenhut Corporation
and James Janecka, Deborah Perretta,
Margaret Carrillo, M.D., Dr. Frederick,
Dr. Holland Hull, Meriam Byrd, and Carol Snell

Dated: March 19, 2004