IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| | : | |
| vs | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

**DEFENDANTS WACKENHUT CORRECTIONS CORPORATION
AND THE WACKENHUT CORPORATIONS REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANTS MOTION FOR SUMMARY JUDGMENT**

Plaintiff's Response to Defendant Wackenhut Corrections Corporation and The Wackenhut Corporation's (hereinafter "Wackenhut") Motion for Summary Judgment does not, in any way, make a showing sufficient to establish the existence of all necessary elements essential to prove their case as required by F.R.C.P. 56.  As averred in Defendant's Motion for Summary Judgment, Plaintiff's

federal claim under § 1983 fails in that the levels of conduct necessary to show deliberate indifference on the part of Wackenhut do not exist.

Contrary to Plaintiff's apparent perception, in citing <u>Wade v. City of Pittsburgh,</u> 765 F.2d 405, (1985), Wackenhut is not claiming any qualified immunity regarding the § 1983 action. Plaintiff has simply failed to establish with the requisite proof the elements essential to prove deliberate indifference and that Plaintiff's constitutional rights were violated by any actions or inactions of Wackenhut, as fully presented in the underlying Motion for Summary Judgment and accompanying Brief.

The "evidence" presented by Plaintiff is no evidence at all, but merely unsupportable allegations. In the face of documents and deposition testimony which establishes that Plaintiff was actively drinking alcohol during the period of his incarceration, that Plaintiff was instructed that he was to bring his own medications each weekend for the forty eight hours he would be incarcerated, that Plaintiff unilaterally decided to refrain from bringing his medications to the prison, that Plaintiff would ingest great amounts of water to "flush his system", that Plaintiff was diagnosed as having a hyponatremic condition and that no traces of benzodiazapene was found in his system immediately after the accident, Plaintiff presents no colorable or significantly probative evidence to refute these facts and support the essential elements of his claims.

No direct causal link between any actions or inactions of Wackenhut to Plaintiff's injuries has been established sufficiently as required by F.R.C.P. 56. On the other hand, Wackenhut's evidence regarding Plaintiff's clear contributory negligence has been shown by the presentation of unrefuted and substantial documents and testimony.

In his response, Plaintiff latches on to snippets of testimony, misconstruing words and misleading the Court. Nurse Meriam Byrd indeed called the Weekender Program a "nightmare" for the infirmary staff due to the added strains of administering to these transient inmates. Plaintiff tends to infer that Nurse Byrd's comments related that the methods of administration employed by the infirmary were "nightmarish". A simple reading of Nurse Byrd's transcript clearly reveals the mischaracterization. Nurse Byrd was obviously commenting on the fact that the influx of more than a hundred prisoners each weekend for a forty eight hour period was an extreme strain on the medical staff due to the haphazard way that these weekend prisoners brought their medication to the prison. She explained fully that some prisoners would bring entire bottles of medication, some would bring various medications mixed with others and that some arrived with clearly expired medications.

Even more blatant is the mischaracterization of Correctional Officer Sean Gardner's testimony regarding the weekend inmates' medication. Gardner said nothing regarding the failure of the infirmary to dispense medications. Mr. Gardner's testimony clearly only referred to complaints made by the prisoners, not Gardner's affirmation that this actually occurred.

As evidence that Wackenhut failed to train its corrections officers and medical staff with respect to the Weekender Program, Plaintiff submits the testimony of Lt. Chad McCullough, who admitted to being unfamiliar with the written policy on prescription medication. Lt. McCullough is a corrections officer, not a medical person. Lt. McCullough is responsible for security, not the administration of medication. This is nothing but sham evidence by Plaintiff to attempt to prove that the staff at the prison was inadequately trained. There has been no direct causal link shown between any lack of training and the injuries suffered by Mr. Jackson, only the barest of allegations.

It is also baselessly claimed by Plaintiff that Laureen Robertson, who was acting Health Services Administrator during at least part of Mr. Jackson's 2000 incarceration, had never seen the

Weekender Policy. A simple reading of the transcript of Ms. Robertson's deposition plainly reveals that Ms. Robertson was shown two documents by Plaintiff's attorney. The first document she was shown was never in effect during her tenure according to her response. As for the second document, Ms. Robertson had no recall of seeing it. Plaintiff, again, completely mischaracterizes testimony in an attempt to create evidential support for a baseless position.

One of the most blatant mischaracterizations of testimony by Plaintiff is that of Deborah Perretta's. Plaintiff states that "Ms. Perretta unequivocally testified that Plaintiff never correctly received all of his medications on a daily basis, despite the risk he might suffer from the sudden loss of consciousness syndrome, complications associated with his diabetes, or other life-threatening consequences." Ms. Perretta said nothing of the sort. She answered Plaintiff's questions regarding the records showing the administration of medication. While dates where there were absences of certain medications were addressed, the reasons for these absences was conveniently and conspicuously absent from Plaintiff's coloration of Ms. Perretta's testimony. As explained in the Motion, Mr. Jackson arrived in an inebriated state on several weekends and his medication was modified accordingly. On other weekends, Mr. Jackson would not arrive at the prison for his forty eight hour stay with the medications he was required, and aware that he was required, to bring with him.

Plaintiff continually refers to Mr. Jackson's prior incarceration in 1998 (for receiving stolen property) and the alleged failure of the medical staff to refer to his records from this incarceration. This is but another red herring served up by Plaintiff in an attempt to establish that Wackenhut had notice of Plaintiff's condition during his weekend incarceration in 2000. Plaintiff's condition in 1998 has no bearing whatsoever to his condition in 2000. Wackenhut was completely aware of Plaintiff's condition in 2000 during his 2000 incarceration. The prescriptions either faxed or conveyed via

telephone by Plaintiff's treating psychiatrist, Dr. Silverman, in 2000 were approved and administered as warranted by the infirmary staff, but the actual administration of these medications was completely dependent upon Mr. Jackson's physical condition on any given weekend.

Mr. Jackson alleged no injuries due to any deprivation of medications on any weekend but the fourteenth weekend. He was furloughed each weekday and free to treat whenever and with whomever he chose. As the evidence is completely bereft of Mr. Jackson seeking treatment on any of the weekdays between late February and late May, 2000, one can only assume that Mr. Jackson had no complaints or ailments serious enough to seek treatment during those weekdays. However, if Plaintiff's response is to be given any credence, his "serious medical needs" would only surface on the weekends. Surely Mr. Jackson, after suffering through a grueling weekend of medication deprivation, would have sought some sort of medical attention upon his release every Sunday evening. No evidence of this has been presented.

Given the fact that between each weekend Mr. Jackson was on furlough and administering to his own medical needs Monday through Friday, and the lack of any evidence showing a consistent decline in any of his conditions during each successive weekend due to a deprivation of medication at the prison, no weekend other than May 26 to May 28, 2000 is of any consequence or relevance. Plaintiff apparently asks the Court to infer that Mr. Jackson was the picture of health before 6:00 P.M. on Friday, May 26, 2000, having certainly taken care of all his medical needs and not committed any self-inflicted abuses throughout the previous week. Or, conversely, does Plaintiff intend to infer that Mr. Jackson was so decimated from each successive weekend of deprivation that he could not recover during the week and was steadily declining?  There has been no evidence presented by Plaintiff's to prove or persuade the Court regarding either scenario. The weekend of May 26 – May 28, 2000 is separate and distinct from the prior weekends, and any evidence of

5

causation must have been presented from the facts surrounding that particular weekend, not speculation and conjecture regarding prior weekends where no injuries were alleged at all.

"Numerous genuine issues of material fact" are claimed to exist by Plaintiff. In reviewing the facts presented in Wackenhut's Motion for Summary Judgment - gathered through documents, Plaintiff's own testimony, and irrefuted testimony of other deponents – it is revealed that there are no genuine issues of material fact. Moving Defendant Wackenhut only disputes those mere allegations by Plaintiff that have been inarguably disproven by the strong and substantial evidence presented by Defendants. The coloration attempted by Plaintiff's regarding the genuine facts does not rise to the level of evidence, but remain mere unsubstantiated allegations.

Taking all of the pleadings, depositions, answers to interrogatories and admissions on file, there are no genuine issues as to any material fact. Mr. Jackson admits that he was actively drinking during his incarceration. He admits that he decided to stop bringing his medications. He admitted to medical personnel at Crozer- Chester Hospital that he attempted to flush his system. He admitted to one of his treaters, Dr. Gzesh, that he had stopped taking Klonopin for "several days" before his accident. Mr. Jackson never refuted that he was actively drinking up to the very weekend of his accident, only his attorneys do. Mr. Jackson never refuted that he was aware that he was required to bring his own medications, only his attorneys do. Mr. Jackson's attorneys cannot create genuine issues of material fact from mere allegations, and the facts that are material to Plaintiff's cause of action are not disputed. It is admitted that Plaintiff was a weekend prisoner at the George W. Hill Correctional Facility from February through May of 2000. It is admitted that he had been prescribed drugs by his treating physician. It is admitted that there were times, specifically when a medical judgment was made that Plaintiff was inebriated, that his medications were replaced with ones that were not contraindicated when mixed with alcohol. It is admitted that certain records were not

6

retained, as there is no statute or requirement for the prison to retain all documents for all prisoners. It is admitted that the weekender program was a "nightmare" for the medical staff, as explained by Nurse Byrd, in that the weekend prisoners would bring entire months of medication every weekend and would cause storage and logistics problems.  It is admitted that certain weekend prisoners would not receive all the medications they were prescribed, for to do so with such prisoners where they were suspected of, or obviously in, a state of inebriation or alcohol withdrawal would pose a serious risk to their health.

  Plaintiff's smoke and mirrors, spins, mischaracterizations and red herrings, although admittedly creative,  do not raise unsubstantiated and baseless allegations to the level of  material facts.  Certain allegations made by Plaintiff are inarguably material facts and are undisputed. Numerous others, as revealed in the foregoing, had been refuted and found lacking in any degree of genuineness by the discovery that has been conducted over these many months.

  Once all reasonable inferences have been drawn from the evidence and construed in favor of Plaintiff, we are left with the factual scenario presented in Defendant's Motion for Summary Judgment.  The evidence does not conflict at all, and Plaintiff's attempts to characterize unsubstantiated allegations as evidence, while ignoring facts that have been substantiated through discovery, are merely transparent attempts to fabricate disputes where none actually exist.

  F.R.C.P. 56 requires the entry of summary judgment against a party who "fails to make a showing sufficient to establish the existence of an element essential to that parties case…"  here, Plaintiff has failed to establish the elements of both the federal claims and the state tort claims.  The factual matters are clear due to the strength of moving defendant's evidence, while the purported factual disputes that Plaintiff claims to exist are completely unsupported and, in light of the facts ascertained in discovery, mere allegations.

There are vast differences between the treatment necessary for full-time incarcerated prisoners and those who show up on Friday evenings for a forty-eight hour stay. While these differences are readily apparent, Plaintiff ignores the reality that the weekend prisoners are basically new prisoners each successive weekend: they may have changed doctors during the week, changed medications, stopped medications or committed abuses that effect their physical condition. Full time prisoners are able to be monitored at all times by medical staff and security and are completely and utterly dependant on the prison to provide for their medical needs during the entire length of their stay. The weekender is instructed to bring his own medication and, after approval and an assessment of the inmates condition upon presenting themselves at the prison on Friday evening, are administered the medications deemed appropriate by the medical judgment of the infirmary personnel.

The prison's separate "Weekend Program" recognized these differences and made each weekend inmate aware that the medications they were taking had to be brought with them each and every weekend because the prison only stocked what was deemed minimally necessary for the care of full-time inmates. Mr. Jackson admitted that he was appraised of this policy and there has been no evidence presented that he did not understand it.

Plaintiff points to no specific policy that was the "moving force" behind any alleged deprivation in his response, but appears to conjure a policy of Wackenhut designed to "willfully disregard the serious medical needs of weekenders". On the contrary, while the policy was adequately conveyed to prisoners and implemented by the staff, the prisoners had certain responsibilities under the policy – one of which was to bring their medications with them each weekend. The policy had to be further modified for a prisoner such as Mr. Jackson, who had arrived inebriated various times or suffering from alcohol withdrawal at other times. Although the prison

could certainly have drawn a hard line with Mr. Jackson and sent him to the Judge when he presented himself in this condition, they obviously cut him a number of breaks so that a full-time thirty day sentence would not be imposed.

In a masterful display of circular logic, Plaintiff argues that the prison should have helped him by strictly adhering to the policy of "holding in" a prisoner who violated the rules and should have placed him into the general population as a full-time prisoner where he could have taken advantage of the prison's detoxification program.

An argument is also made by Plaintiff that Defendants "…intentionally destroyed Plaintiff's weekly urine tests." This wild accusation is completely baseless. Urine tests for the weekend prisoners were entirely random, not required to be taken every week. While not a model of record retention, the prison retains those documents necessary for running all aspects of a prison and discards those peripheral records that another facility, perhaps a hospital, would be required to retain. It is not even known whether <u>any</u> urine tests were given to Plaintiff, as the evidence revealed that he would be obviously and unmistakably drunk on those Friday's when he was sent directly to the main prison. Why perform a urine test when an inmate is obviously intoxicated? Put him in a cell, treat him medically, and then let him go home when his forty eight hours is up. Or, as Plaintiff apparently wishes the prison would have done, revoke his weekend status, keep him in the general population to serve his thirty days without furlough. This is what would have occurred had the prison gone strictly "by the book", but their altruistic position in this regard is now, after the fact, being attacked by Plaintiff.

Another accusation is that Wackenhut "lost" Mr. Jackson's medication one weekend. He apparently was made aware of this on a Sunday evening when he was about to be released. No evidence of any complaint or grievance regarding such an event exists. Regardless, what does "lost"

9

medication have to do with Mr. Jackson bringing his medication to the prison during the succeeding weeks? According to Mr. Jackson, this loss of his medication was the catalyst that prompted him to make the decision that he was not going to bring any medication to the prison again. There has been no evidence presented that Mr. Jackson had any expectation of receiving medications he did not bring with him to the prison. The evidence is clear, from Mr. Jackson's own testimony, that each time he brought his medication (as long as he was not inebriated or deemed withdrawing from alcohol) his medication would be administered to him. Throughout the medical administration records are entries where Mr. Jackson, for reasons only known to him, refused his medications.

Plaintiff cites Judge Baylson's opinion in Mason v. Abington Police Dept., No. 01-1799 (E.D.Pa. 2002) in support of his seeming contention that there was a policy or custom of the prison that was the "moving force" or a direct causal link to his injuries. Judge Baylson opined that "[i]f the policy or custom identified does not facially violate federal law, causation must be established by 'demonstrating that the municipal action was taken with deliberate indifference as to its known or obvious consequences. A showing of simple or even heightened negligence will not suffice.' " Id. (quoting Berg v. County of Allegheny, 219 F.3d 261, 275 (3rd Cir. 2000), quoting Board of County Commissioners Comm'rs v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 137 L.Ed. 2d 626 (1997)).

The "policy" Plaintiff points to – a "policy of deliberate indifference to the serious medical needs of Plaintiff" – was never a policy of the prison. Plaintiff also points to the "policy with respect to distributing necessary prescription medication to weekend inmates" and deems it "unworkable". On the contrary, the policy of distributing medication worked more than adequately, despite the hardships it causes to the medical staff. No evidence has been presented regarding any other inmates specific allegations regarding a deprivation of prescription medication, only that such a policy was deliberately indifferent to a weekend inmates serious medical needs. Defendants arguments

regarding Plaintiff's lack of a showing of deliberate indifference are fully set forth in the original Motion for Summary Judgment.

The case of Wade v. City of Pittsburgh, 765 F.2d 405 (1985) is totally inapposite to the instant case. Defendants are making no claims whatsoever that the Political Subdivision Tort Claims Act applies to Plaintiff's Civil Rights claim under § 1983. Defendants made no arguments that the qualified immunity afforded under certain circumstances in a § 1983 claim is afforded to them. On the contrary, Defendants base their arguments regarding the § 1983 claim on Plaintiff's complete lack of substantial evidence proving deliberate indifference. Defendants raise the immunities afforded under the Political Subdivision Tort Act only in relation to Plaintiff's state tort claims. Wade does not stand for immunities being denied regarding state tort claims. Wade only holds that the state based immunities have no effect on federal claims such as § 1983.

The Mahan case, cited in Wackenhut's Motion for Summary Judgment and stated to be "distinguished from the instant case" in Plaintiff's response, is not distinguishable. On the contrary, it is directly on point. There has been no evidence presented that Mr. Jackson made any complaints on the weekend of May 26 – May 28, 2000 to any guard or medical personnel regarding his physical condition. The prison was subjectively unaware that Mr. Jackson had stopped taking his medication "several days" before his accident, as was reported by one of his treating physicians, Dr. Gzesh. The prison was subjectively unaware that Mr. Jackson had been flushing his system with water in an attempt to mask his alcohol intake. There is simply no evidence presented by Plaintiff that Mr. Jackson required any intervention on that particular weekend or that he may have been days into withdrawal from the Klonopin he had unilaterally decided to stop taking. Mr. Jackson admitted that he had received Insulin that weekend, and, particularly, that he received his dose on the morning of May 28th – and possibly another dose later that day. This insulin was administered by a nurse, to

11

whom Mr. Jackson could have voiced his immediately perceived needs and revealed the fact that he had ceased taking his medication days before.  There is no evidence presented that Mr. Jackson ever did this.  On the weekends he was experiencing "…sweating, shaking, inability to focus his eyes, not being able to walk straight and constant vomiting…" the infirmary asessed that he was withdrawing from alcohol and he was treated accordingly with different medication.  There is absolutely no evidence that Mr. Jackson was experiencing any of the above symptoms on the weekend of May 26th – May 28, 2000.

The Defendants have cited United States v. Fayette County, 599 F.2d 573 (3rd Cir. 1979) in their brief attached to the Motion for Summary Judgment, and it is submitted that this case supports Defendants arguments, not the Plaintiff's arguments.

Chase v. Ward, No. 98-4100 (E.D. Pa. 2000), cited by Plaintiff's in their response, is a matter concerning a Motion to Dismiss under F.R.E. 12 (b) (6).  Such a motion is based on a completely different standard than a Motion for Summary Judgment pursuant to F.R.C. P. 56.  The delay of medical treatment claimed in Chase was over a period of six weeks in which the Plaintiff was incarcerated full time with no recourse to outside treatment.  The Plaintiff in Chase also alleged that he persistently filed sick call slips, letters, grievances and other requests for medical treatment.  Also, it was alleged that Mr. Chase also spoke directly to the Warden and the Health Services Administrator at the prison, asking that his medical needs be attended to.

There is no evidence that Mr. Jackson, in the instant case, ever filed sick call slips, or letters, filed grievances or requested any medical treatment during his 2000 incarceration or that he spoke with anyone regarding his alleged deprivation.  A 12 (b) (6) motion asserts that Plaintiff has failed to prove any set of facts to support a claim.  It tests the legal sufficiency of a claim.  A Motion for Summary Judgment under F.R.C. P. 56 requires that the responding party make a showing of

evidence to prove all the essential elements of their cause of action. As set forth in Chase, "[t]o be deliberately indifferent, a prison official must know of and disregard a serious risk to inmate health or safety". Chase at p. 5. There has been no evidence presented that Defendants were aware of Mr. Jackson's activities regarding stopping the intake of Klonopin himself "several days" prior to his accident or any evidence that Mr. Jackson complained of any immediate condition, requested medication, or was denied any medication on the weekend of his fall.

In citing Natale v. Camden County Correctional Facility, 318 F.3d 575, (3rd Cir. 2003), Plaintiff asserts that this matter is factually similar to the instant case. However, Natale concerned an insulin dependent diabetic who was not provided with insulin during the first twenty one hours of incarceration. Natale was not a "weekender", but was put directly into the general population. The Court of Appeals found that no one at the Camden County Prison ever asked Natale how often he needed the insulin administered or attempted to obtain that information from his treating physician. The Court found that this inaction was sufficient evidence of deliberate indifference.

In the instant case, Defendants were aware of Mr. Jackson's physical condition and the medications he had been prescribed, unlike the Defendant in Natale. His Insulin was monitored and administered as needed. There is no evidence that he did not receive his Insulin when needed. As for his other medications, Mr. Jackson was aware that he needed to bring in these medications every week. He failed to do so. There was no indication that the recklessness evidenced in Natale was present, or that any employee of Defendant knew of and disregarded and "excessive risk" to Mr. Jackson's health and safety as was found in Natale. Mr. Jackson never informed anyone at the prison that he had stopped taking his medication "several days" before his accident or that he had attempted to flush his system of, it is assumed, the alcohol that he had been drinking that week before reporting. Insulin was monitored and administered at least within fourteen hours of his

accident and he was being released from custody at the time of his accident. His blood sugar was not at a dangerous level. There is no evidence that Mr. Jackson made any complaints or exhibited any symptoms which would have led prison personnel to believe he was at an excessive risk.

In conclusion, Plaintiff's Response makes no showing of the evidence required to prevent Summary Judgment on behalf of Defendants Wackenhut Corrections Corporation and The Wackenhut Corporation. No evidence of a specific policy or custom of deliberate indifference has been advanced. The policies in place were specifically designed to ensure that a weekend inmate would not go without any necessary medication by directing them to bring their own medication to the prison. Plaintiff's have produced no expert to establish any jail or jail infirmary standards and they have not proved any violations of standards. The "disputes" Plaintiff alludes to in an attempt to establish genuine issues of material fact are non-existent. The facts gathered through documents, depositions and interrogatory responses that has been presented by Defendants in the Motion for Summary Judgment are unrefuted with any actual evidence by Plaintiff. Plaintiff merely "disputes" these facts with sham evidence and unsupported allegations.

The mischaracterization of testimony and records and the allusion to completely tangential issues is simply of smoke and mirrors, false assumptions and red herrings designed to divert the attention of the Court from the issues material to this case. Has Plaintiff produced sufficient evidence to prove all the essential elements of deliberate indifference and negligence as required? The answer is, inarguably, no.

WHEREFORE, Defendants Wackenhut Corrections Corporation and The Wackenhut Corporation respectfully requests that the Order attached to Defendant's Motion for Summary Judgment be executed that that Summary Judgment be granted on behalf of Defendants Wackenhut

Corrections Corporation, The Wackenhut Corporation, Meriam Byrd, and Carol Snell.

                                          Respectively submitted,

                                          **MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN,**

                                    By:/s/ David F. White, Esquire
                                            DAVID F. WHITE, ESQUIRE
                                            DENNIS P. HERBERT, ESQUIRE
                                            Attorneys for Defendants,
                                            Wackenhut Corrections Corporation,
                                            and The Wackenhut Corporation

Dated: April 16, 2004

\24_A\LIAB\DPH\LLPG\616995\LHM\16422\00102

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| vs. | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERIAN BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

**CERTIFICATE OF SERVICE**

I, David F. White, do hereby certify that a true and correct copy of the Motion for Summary Judgment has been served by U.S. Mail, First Class, postage prepaid, to the following at the addresses and on the date listed below:

>Derrick Howard
>John Rollins, Esquire
>HOWARD ROLLINS & JONES
>1319 South Broad Street
>Philadelphia, PA  19147
>
>Kathleen E. Mahoney, Esquire
>Robert M. DiOrio, Esquire
>Front and Plum Streets
>P.O. Box 1789
>Media, PA  19063
>
>William C. Reil, Esquire
>42 S. 15th Street
>210 Robinson Bldg.
>Philadelphia, PA  19102

April 16, 2004
Date

/s/ David F. White
David F. White