IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ARTHUR JACKSON, III** | : | NO. 02-3230 |
| V. | : | CIVIL ACTION |
| **DELAWARE COUNTY ET AL** | : | JURY TRIAL REQUESTED |

**DEFENDANTS, DELAWARE COUNTY BOARD OF
PRISON INSPECTORS, DELAWARE COUNTY,
CHARLES P. SEXTON, JR. AND GEORGE W. HILL'S
REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Defendants Delaware County Board of Prison Inspectors, Delaware County, Charles P. Sexton, Jr. and George W. Hill (collectively, the "County Defendants) hereby reply to Plaintiff's Response to Defendants' Motion for Summary Judgment as follows:

Initially, the County Defendants incorporate by reference as if set forth at length herein, all factual averments and legal arguments raised in their Motion for Summary Judgment, as well as all factual averments and legal arguments raised in the Motion for Summary Judgment and Reply of the Wackenhut Defendants.

**I.      LIABILITY OF DELAWARE COUNTY UNDER § 1983**

Plaintiff's theory of liability against Defendant Delaware County under § 1983 apparently relies on the holding in <u>Monell v. Department of Social Services</u>, 436 U.S. 658, 98 S.Ct. 2018 (1978). At page 18 of Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, he states that "Delaware County, a government body, is liable to plaintiff's injuries under Section 1983, as set forth in plaintiff's complaint, because defendants' (sic) employees or agents executed a governmental policy that directly resulted in the

deprivation of plaintiff's civil rights."

Plaintiff's Memorandum appears to describe the operative "governmental policy" which directly resulted in the deprivation of plaintiff's civil rights as follows:

> **It is alleged in the instant case that defendants had actual knowledge that plaintiff suffered from serious medical conditions and that he continuously required physician prescribed medication to treat the same. Defendants also had actual knowledge that if plaintiff did not receive his prescription medications and medical treatment, and he would be subject to significant discontinuation syndrome resulting in, <u>inter alia</u>, disorientation, blackouts, seizures and/or death. Defendants not only ignored plaintiff's condition, but through their acts, omissions, policies, customs, and lack of training, caused plaintiff to sustain physician-diagnosed, severe permanent brain injury.**

(Pages 18 – 19 of Plaintiff's Memorandum of Law).

Plaintiff's suggestion that this alleged "governmental policy" is attributable to Defendant Delaware County is clearly erroneous and not supported by any evidence in the record. Defendant Delaware County does not make any policies with respect to the management or operation of the George W. Hill Correctional Facility, nor does it hire, train or supervise any prison employees, particularly those who provide medical services to inmates. This is clearly supported by the deposition testimonies of Charles P. Sexton, Jr. and George W. Hill **See, Deposition of Charles P. Sexton, Jr. at pages 11 and 34 and Deposition of George W. Hill at page 18, 28**. All policies with respect to the management and operation of the prison, including policies regarding medical care, are developed, promulgated and administered by Wackenhut Corrections Corporation pursuant to the Contract dated August 31, 1995**. See, Deposition of George W. Hill at page 35 and paragraph 4.2.8 of the Contract between Wackenhut Corrections Corporation and the Delaware County Board of Prison Inspectors.**. Further,

there is no evidence whatsoever in the record of this case that Defendant County of Delaware had any knowledge or actual notice of Plaintiff's medical condition or need for medications. In fact, neither George W. Hill nor Charles P. Sexton, Jr. had any knowledge of the Plaintiff or his fall on 5/28/00 until being served with Plaintiff's Complaint. **See Deposition of George W. Hill, pp. 12 - 13; deposition of Charles P. Sexton, Jr., p. 15**. Moreover, there is no evidence in the record that Plaintiff ever communicated his need for medications or medical treatment directly to any of the County Defendants.

In order for a municipal defendant to be directly liable under a § 1983 claim, Monell and its progeny require Plaintiff to adduce evidence of scienter on the part of the municipal actor of a policy or custom amounting to a deprivation of civil rights. See, *Simmons v. City of Philadelphia,* 947 F.2d at 1062 (1991) (relying on holdings in *Monell, City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988); and *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989)). Instantly, the record is devoid of any evidence of scienter or knowledge or acquiescence of any policy or custom which served to deprive Plaintiff of his constitutional right to medical care.

Moreover, Plaintiff's description of the alleged "governmental policy," to wit:

> defendants had actual knowledge that plaintiff suffered from
> serious medical conditions and that he continuously required
> physician prescribed medications to treat the same...and actual
> knowledge that if plaintiff did not receive his prescription
> medications and medical treatment....and that Defendants not only
> ignored plaintiff's condition, but through their acts, omissions,
> policies, customs, and lack of training, caused plaintiff to
> sustain...injury

does not meet the requisite scienter-like evidence that the responsible policy makers were aware of and either ignored or acquiesced in a longstanding custom or practice, as Plaintiff presents no evidence whatsoever to support the generalizations contained therein. As this Honorable Court noted in ***Mason v. Abington Twp. Police Department***, 2002 WL 31053827, "after identifying the policy or custom that caused the injury, the plaintiff must demonstrate that through its deliberate conduct, the municipality was the moving force behind the injury alleged...a showing of simple or even heightened negligence will not suffice." (Citing, ***Berg v. County of Allegheny***, 219 F.3d 261 (3d Cir. 2000).[1]

Further, there is simply no evidence that any of the County Defendants knew of Plaintiff's need for medical treatment, but intentionally refused to provide it, or that any of the County Defendants delayed necessary treatment based on a non-medical reason, as apparently alleged by the Plaintiff.

Ultimately, despite the bald assertions of Plaintiff's Memorandum to the contrary, there is no evidence from which a reasonable trier of fact could conclude that Defendant Delaware County executed a "governmental policy" that directly resulted in the deprivation of Plaintiff's Civil Rights. Accordingly, Defendants Delaware County's Motion for Summary Judgment must be granted on this issue.

## II    LIABILITY OF OTHER COUNTY DEFENDANTS UNDER § 1893

---

[1] Defendants note that in ***Mason***, this Honorable Court granted Defendants' 12(b)(6) Motion to Dismiss as Plaintiff's § 1983 claims against Abington Township, as Plaintiff's complaint failed to allege that the policy or custom facially violated the law or that Abington was "deliberately indifferent to an obvious risk." Instantly, Plaintiff is unable to make a similar showing of evidence, despite an extensive discovery process.

Although Plaintiff's Reply and Memorandum of Law do not address the liability of the other County Defendants under § 1983, the same argument raised with respect to Defendant Delaware County, supra, applies equally to all other County Defendants. However, insofar as Plaintiff did not raise the issue of § 1983 liability on behalf of Defendants Delaware County Board of Prison Inspectors, Charles P. Sexton, Jr. and George W. Hill, their Motions for Summary Judgment on this issue are uncontested, and as such, should be granted.

### III    LIABILITY OF COUNTY DEFENDANTS UNDER THEORY OF STATE-CREATED DANGER

The Supreme Court has noted that the failure of the state to protect an individual from harm inflicted by private persons does not violate the Due Process Clause of the Fourteenth Amendment. ***DeShaney v. Winnebago County Department of Social Services***, 489 U.S. 189 (1989). Rather, the state must engage in action which causes deprivation of life or liberty. U.S. Const. Amend. X, ***Deshaney***, 489 U.S. at 195-203.

In ***Kneipp v. Tedder***, 95 F.3d 1199 (3d Cir. 1996), the Third Circuit recognized the "state-created danger theory" as one instance where state action is sufficiently implicated in the private harm to constitute a violation of due process. However, the Third Circuit has been hesitant to find liability under the state-created danger theory and has only done so under the specific circumstances of each individual case.

Four elements must be present for the state-created danger theory to apply: 1) the harm ultimately caused was foreseeable and fairly direct; 2) the state actor acted in wilful disregard for the safety of the plaintiff; 3) there existed some relationship between the state and the plaintiff; and 4) the state actors used their authority to create an opportunity that otherwise would not have

existed for the third party's crime to occur. ***Kneipp***, 95 F.3d at 1208.

In support of his theory of state-created danger, Plaintiff appears to rely on Dr. Lee Silverman's expert report of February 2, 2004. Specifically, after reviewing the relevant case law regarding state-created danger, Plaintiff, at page 21 of his Memorandum of Law, asserts that the case law is consistent with Dr. Silverman's report, which states as follows:

> **Deposition testimony of a nurse involved in administering medication to Mr. Jackson and other inmates in the DUI program characterized Prison policy as a "nightmare." Prison personnel were unfamiliar with the implementation of Prison policies dealing with the administration of prescription medication to weekend inmates. Medication was lost and not returned to inmates on their departure. Record keeping as to medications was grossly inadequate, and there is no record that Mr. Jackson received any of this medications on the weekend that he was injured. The Prison failed to follow its own policies and to train staff about prescription policy for weekend inmates.**

Although the County Defendants dispute the veracity of Dr. Silverman's allegations, the County Defendants also note that none of Dr. Silverman's allegations suggest any actions or inactions on the part of any of the County Defendants. In attempting to link the County Defendants to the allegations of Dr. Silverman's report, Plaintiff merely states that "Defendant Delaware County Board of Prison Inspectors is the entity that administers the Prison for Delaware County...." and that "The Board, according to statute and by Contract with Wackenhut, is the ultimate authority, which has care, custody, and control of the Prison." Further, Plaintiff states that "Superintendent Hill is an employee of the Board. Mr. Hill and the Board have final policy-making authority, and the warden at the prison...is responsible to Superintendent Hill and the Chairman of the Board, Charles P. Sexton." (Page 22 of Plaintiff's Memorandum of Law).

Despite Plaintiff's generalizations regarding the hierarchy of authority at the George W.

Hill Correctional Facility, Plaintiff has not presented any substantive evidence that the County Defendants committed any of the offenses alleged by Dr. Silverman, or were even aware of any of the alleged offenses.

The four elements of the "state-created danger theory" presuppose that the state actor have acted or failed to act in some way which ultimately brought about Plaintiff's harm. Instantly, there is no evidence of record that any of the County Defendants acted or failed to act in any way.

Plaintiff would like the Court to find that by virtue of nothing more than their alleged authority, Defendant Hill and Defendant Sexton are guilty of the alleged "deliberate indifference" as described Dr. Silverman's expert report as set forth above.  However, he does not allege, and has not adduced any evidence, to prove that any of the County Defendants, including Defendants Hill and Sexton, acted in "wilful disregard" for Plaintiff's safety or that any of the County Defendants used their authority to create an opportunity that otherwise would not have existed for the third party's crime to occur, as required by ***Kneipp***.

Essentially, Plaintiff is attempting to disguise a claim for vicarious liability and/or respondeat superior (which he knows to be meritless) as a claim under the state-created danger theory.  Without any evidence to support the elements of the state-created danger theory, however, Plaintiff's claim in this regard must fail.

**IV      LIABILITY OF INDIVIDUAL DEFENDANTS**

**A.      Plaintiff's § 1983 claims against individual defendants**

Plaintiff's Memorandum of Law at page 36 states that the basis for liability against Defendants Hill and Sexton is that they "knew or should have known that the Prison's written

policy regarding prescription medications for 'weekenders' was unworkable in practice and they willfully disregarded their duty to weekend prisoners." He goes on to state that the "custom of the prison was to ignore the serious medical needs of weekend prisoners in this regard." Plaintiff posits that **"where a policy or custom of deliberate indifference is common knowledge among prison staff, then those in charge at the prison are not isolated from liability."**

There is no evidence on the record of this case that any alleged policy or custom of deliberate indifference was "common knowledge" among any of the County Defendants. Further, while it is unclear whether Plaintiff is making these arguments in support of his claims under § 1983 or in support of his state tort claims, Plaintiff's argument is nevertheless contrary to well- settled principles of law.

With respect to Plaintiff's § 1983 claims, "a defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable." **Sutton v. Rasheed**, 323 F.3d 236 (3d Cir. Pa. 2003), **citing, Rode v. Dellaciprete**, 845 F.2d 1195 (3d Cir. 1988). In **Sutton**, state prisoners brought a § 1983 action against personnel of the Pennsylvania Department of Corrections alleging infringement of their rights under the free exercise clause of the First Amendment. Specifically, Plaintiffs sought to impose liability upon the Commissioner of Corrections on the basis that certain challenged policies were applied to them. The Third Circuit affirmed the decision of the Honorable Edwin M. Kosik of the United States District Court for the Middle District of Pennsylvania, holding that there was no evidence that Commissioner Horn had any personal involvement in the application to Plaintiff's of the challenged policies, and that the District Court properly dismissed the claims against him.

Similarly, in the instant case, Plaintiff has adduced no evidence whatsoever which

demonstrates that either George W. Hill or Charles P. Sexton had any personal involvement whatsoever with the administration of any of the policies (real or imagined) which allegedly led to Plaintiff's harm. It is simply insufficient for Plaintiff to merely allege, as he appears to, that liability attaches to the individual Defendants because, as stated by Plaintiff, "where a policy or custom of deliberate indifference is common knowledge among prison staff, then those in charge at the prison are not isolated from liability," without adducing any evidence that these Defendants knew of or acquiesced in any such policy or custom. This argument wholly contradicts all relevant precedent on this issue.

Further, Plaintiff's Memorandum of Law asserts that the individual County Defendants are not entitled to qualified immunity in their official capacities. However, in their Motion for Summary Judgment, Defendants Sexton and Hill asserted qualified immunity in their *individual* capacities. Plaintiff's response to Defendants' Motions for Summary Judgment is silent as to Defendants Hill and Sexton's claims of qualified immunity in their individual capacities, and as such, their Motion for Summary Judgment on this issue remains uncontested and should be granted.

    **B.**    **Plaintiff's state tort claims against individual defendants**

Although Defendants cannot be certain, it appears that Plaintiff's arguments with respect to Defendant Hill and Defendant Sexton's liability for state tort claims, albeit somewhat confusing, relies on ***Wade v. City of Pittsburgh***, 767 F.2d 405 (1985). Plaintiff's reliance on this case is wholly misplaced. This case does not stand for the proposition that (as stated by Plaintiff) **"the Political Subdivision Tort Claims Act has no force when applied to suits under the Civil Rights Act. The result follows whether the suit to redress federal rights is**

**brought in state or Federal Court."** The Political Subdivision Tort Claims Act "PSTCA"), 42 Pa.C.S.A. § 8541, *et seq.* serves to immunize all County Defendants from Plaintiff's state tort claims which, in this case, happen to be pendent to Plaintiff's § 1983. The fact that they are "pendent" state tort claims does not impact the applicability of the PSTCA to them. It applies equally whether the claims are brought in state court or in federal court pendent to federal claims. Plaintiff has not and cannot present any case law whatsoever to the contrary. The law is sacrosanct on this issue.

## V     STATE TORT CLAIMS AGAINST GOVERNMENTAL DEFENDANTS

To the extent that Defendants may have misunderstood Plaintiff's argument as outlined above, it is clear that Plaintiff does not raise any other arguments with respect to the County Defendants' state tort claim immunity. This can only be because there is no valid argument to be made to the contrary. Therefore, it is uncontested that the PSTCA applies to Plaintiff's state tort claims, serving to immunize all County Defendants therefrom.

Accordingly, immunity pursuant to the PSTCA applies to all County Defendants as to Plaintiff's claims for negligence and intentional infliction of emotional distress.

## VI     PRECEDENTS CITED BY PLAINTIFF ARE NOT APPLICABLE IN THE INSTANT CASE

Plaintiff's Memorandum of Law cites various miscellaneous cases to suggest that Summary Judgment is not appropriate. However, closer examination of these cases reveal that Plaintiff either incorrectly interprets these cases or his reliance thereon is misplaced.

***United States ex rel Walker v. Fayette County***, 599 F.2d 573 (3d Cir. 1979): Plaintiff asserts that this case is relevant because the Third Circuit, in reversing the District Court, found

that an inmate's civil rights were violated where he was denied medical treatment during the first ten days of incarceration. The Third Circuit noted that Pennsylvania Law requires that prisoners receive a medical examination after admission to an institution. Plaintiff then argues that he was not examined by a physician within 48 hours of his admission, in contravention to Pennsylvania Law. Instantly, this allegation is 1) untrue and 2) not relevant, because unlike the inmate in the case discussed, supra, Plaintiff was a weekend inmate, who was only present in the prison facility for 48 hours per week, while being furloughed for the remainder of the week where he remained under the care of his own personal physicians. Further, Plaintiff's argument that he was not examined by a physician within 48 hours is absurd, given the medical attention he received during the course of his weekends at the prison.

*Mason v. Abington Township Police Department*, 2002 WL 31053827: Plaintiff correctly cites this Honorable Court that "in order to prevail against the municipality under § 1983, Monell requires a plaintiff to demonstrate that there was a 'direct causal link' between a violation of his rights and a policy or a custom of the municipality." However, again, Plaintiff has failed to demonstrate how he has adduced any evidence whatsoever that there is any "direct causal link" between the alleged violation of Plaintiff's rights and any policy or custom of any of the County Defendants, or that their "deliberate conduct" was the "moving force" behind the alleged injury.

*Chase v. Ward*, No. 98-4100 (E.D. Pa. 2000), cited by Plaintiff's in their response, regards a case where the Plaintiff claimed he was denied medical treatment over a period of six weeks of continuous incarceration. Further, the Plaintiff in *Chase* alleged that he had communicated directly with supervisory personnel at the prison. Instantly, Arthur Jackson was

11

not incarcerated on a full-time basis and he has not alleged, nor is there any evidence to suggest, that he attempted to communicate his concerns regarding his medical care directly to any of the County Defendants.  Therefore, *Chase* is factually dissimilar to the case at bar and Plaintiff's reliance thereon is misplaced.

      *Natale v. Camden County Correctional Facility*, 318 F.3d 575 (3d Cir. 2003): Plaintiff relies on this case to suggest that there is sufficient evidence in the record to survive a Motion for Summary Judgment.  However, Plaintiff fails to point out that the *Natale* Court only addressed sufficiency of evidence as to Defendant "Prison Health Services," a private company contracted by Camden County Correctional Facility to provide inmate health services.  In *Natale*, the District Court granted summary judgment in favor of all governmental defendants, but the Plaintiffs did not seek appellate review of that Order.  Accordingly, the Third Circuit did not evaluate whether sufficient evidence existed against the governmental entities to warrant denial of summary judgment.  *See, Natale at 578 (footnote. 2).*  Therefore, *Natale* is significantly dissimilar to the instant case and is inapplicable to the analysis of whether the County Defendants are entitled to summary judgment.

### VII    CONCLUSION

      Co-defendant has eloquently and succinctly pointed out many of factual distortions Plaintiff has made in response to Defendants' respective Motions for Summary Judgment, and the County Defendants will not reiterate each and every point here, except to say that Plaintiff has failed to adduce any substantive evidence to support his claims against the County Defendants.  He makes broad generalizations without pointing to specific documents or

testimony to support them. He mis-characterizes and misconstrues the testimonies of many witnesses in this case, using only portions of deposition testimonies which are taken completely out of context.

Contrastingly, the County Defendants have provided the Court with the full and complete deposition transcripts of Charles P. Sexton, Jr. and George W. Hill, so the court can fairly judge the testimonies of these Defendants in their full context, and not just rely on the characterizations of counsel. Plaintiff, on the other hand, provided the Court only with "excerpts" of testimony, hoping the Court would not ever have the opportunity to evaluate the "spin" Plaintiff tries to put on each. However, even these mis-characterized and misconstrued excerpts are insufficient for Plaintiff to demonstrate that he has adduced sufficient evidence to survive Summary Judgment.

If one reads Plaintiff's response to the County Defendants' Motion for Summary Judgment with a critical eye, it is clear that Plaintiff's allegations, whether labeled as § 1983 claims under <u>Monell</u> or the state-created danger theory, or state tort claims for negligence or intentional infliction of emotional distress, are really nothing more than a claim for vicarious liability and/or respondeat superior on behalf the County Defendants. Plaintiff is well aware that claims for vicarious liability and/or respondeat superior cannot survive, and therefore, he is attempting to disguise them as <u>Monell</u>, state-created danger, or state tort claims. However, after review of Plaintiff's evidence and argument in support of his claims, the only conclusion can be that his attempts to mask his meritless claims are futile.

Finally, Plaintiff has not come forward with any legal argument or evidence to show why County Defendants Hill and Sexton are not entitled to qualified immunity, or why any of the County Defendants are not entitled to immunity pursuant to 42 Pa.C.S.A. § 8541, *et seq.* on

Plaintiff's state tort claims. Therefore, the only logical conclusion is that Plaintiff has no argument in opposition to these immunities, and these Motions for Summary Judgment are uncontested.

  **WHEREFORE**, based on all of the above, Defendants Delaware County Board of Prison Inspectors, Delaware County, Charles P. Sexton, Jr. and George W. Hill respectfully request that this Honorable Court grant their Motions for Summary Judgment.

             Respectfully submitted:

             **DIORIO AND SERENI, LLP**

**Date: April 16, 2004**    BY: _____
             **ROBERT M. DIORIO**
             I.D. No.: 17838

           BY: **KM1316**_____
             **KATHLEEN E. MAHONEY**
             I.D. No.: 77873
             Front & Plum Streets
             Media, Pa. 19063
             (610) 565-5700
             Attorneys for Defendants Delaware County, Delaware County Board of Prison Inspectors, George W. Hill and Charles P. Sexton, Jr.

## CERTIFICATE OF SERVICE

We, Robert M. DiOrio, Esquire, and Kathleen E. Mahoney, Esquire hereby certify that a true and correct copy of the foregoing Defendants Charles P. Sexton, Jr., George W. Hill, Delaware County and Delaware County Board of Prison Inspectors' Reply to Plaintiff's Response to was served on the date below by United States First Class Mail, postage prepaid:

> Derrick Howard, Esquire
> John Rollins, Esquire
> **HOWARD ROLLINS, LLC**
> 262 South 12th Street
> Philadelphia, PA 19107
>
> David F. White, Esquire
> **MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**
> 620 W. Germantown Pike
> Suite 350
> Plymouth Meeting, PA 19462
>
> William C. Reil, Esquire
> 42 S. 15th Street
> Philadelphia, PA 19102

**DIORIO AND SERENI, LLP**

**Date: April 16, 2004**         BY: _____
                                 **ROBERT M. DIORIO**
                                 I.D. No.: 17838

                                 BY:   KM1316
                                 **KATHLEEN E. MAHONEY**
                                 I.D. No.: 77873
                                 Front & Plum Streets
                                 Media, Pa. 19063
                                 (610) 565-5700
                                 Attorneys for Defendants Delaware County,
                                 Delaware County Board of Prison Inspectors, George
                                 W. Hill and Charles P. Sexton, Jr.