IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### SETTLEMENT CONFERENCE SUMMARY

**COUNSEL ATTENDING SETTLEMENT CONFERENCE:**

**Name:**   David F. White, Esq./Dennis P. Herbert, Esq.

**Address:**   620 W. Germantown Pike, Ste. 350, Plymouth Meeting, PA  19462

**Phone:**   (610) 941-7953

**Client:**   Meriam Byrd, R.N. and Carol Snell, R.N.

**CLIENT ATTENDING SETTLEMENT CONFERENCE:**

Name of Individual with Ultimate Settlement Authority
who will be present at the settlement conference:  Troy Preismeyer

**MOTIONS PENDING:**

None

**STATUS OF DISCOVERY:**

Complete

**OTHER RELEVANT MATTERS:**

Partial Summary Judgment was granted to Defendants by Judge Baylson recently.  The only causes of action that remain are §1983 Civil Rights allegations against Nurses Meriam Byrd and Carol Snell.

**PRIOR OFFERS/DEMANDS:**

Demand:   $750,000.00

Offer:   $0.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| | : | |
| vs. | : | |
| | : | |
| DELAWARE COUNTY; WACKENHUT CORRECTIONS CORPORATION C/O PRENTICE HALL CORP.; WACKENHUT CORPORATION; DELAWARE COUNTY BOARD OF PRISON INSPECTORS; CHARLES SEXTON, CHAIRMAN OF DELAWARE COUNTY BOARD OF PRISON INSPECTORS; GEORGE HILL, SUPERINTENDENT OF DELAWARE COUNTY PRISON (GEORGE W. HILL CORRECTIONAL FACILITY); JAMES JANECKA, WARDEN OF DELAWARE COUNTY PRISON; DEBORAH PERRETTA, HEALTH SERVICES ADMINISTRATOR OF DELAWARE COUNTY PRISON; MARGARET CARRILLO, M.D., DELAWARE COUNTY PRISON; DR. FREDERICK, DELAWARE COUNTY PRISON; DR. HOLLAND HULL, DELAWARE COUNTY PRISON; MERRIAM BYRD, NURSE, DELAWARE COUNTY PRISON; CAROL SNELL, NURSE, DELAWARE COUNTY PRISON | : : : : : : : : : : : : : : : : : : : : : | NO. 02-3230 |

**DEFENDANTS MERIAM BYRD AND CAROL SNELL'S
SETTLEMENT CONFERENCE MEMORANDUM**

**SYNOPSIS OF THE CASE**

**LIABILITY**

Plaintiff Arthur Jackson was convicted of drunk driving for a second time in November of 1999 and sentenced to serve fifteen successive weeks in the George W. Hill Correctional Facility in Delaware County between February and June, 2000. The "weekender" program was instituted in Delaware County to allow a person to keep working at his job during the week and

report to prison on Friday evenings at 6:00 P.M.. The inmates would be released on Sunday evening at 6:00 P.M. and were considered "furloughed" until the following Friday or until their sentence was completely served.

Arthur Jackson had not been employed since 1991 and it is suspected that he passed the "furlough" time drinking alcohol. This suspicion stems from a number of factors, including Corrections Officer Sean Gardner's testimony that Jackson would arrive in an extremely inebriated state on most weekends. It is also Defendant's position that Jackson's fall was more than likely due to a combination of alcohol withdrawal and "hyponatremia" (a condition caused by low salt levels) than Plaintiff's claims that Mr. Jackson suffered a seizure due to withdrawal from medications. Low salt levels can result from an excessive ingestion of water, which is one way to flush one's system of alcohol. It is Defendant's position that Arthur Jackson had been drinking during the weekdays prior to his fourteenth week of incarceration and that he attempted to flush his system to avoid detection should a urinalysis test be performed upon his reporting to the prison on Friday, May 26, 2000.

Plaintiff's theories against Nurse Meriam Byrd and Nurse Carol Snell consist of alleged violations of 42 U.S. C. § 1983 of the Civil Rights Act stemming from a denial of medical care. Plaintiff claims that Nurse Byrd and Nurse Snell failed to provide Mr. Jackson with essential medications causing him to suffer a seizure and resultant injuries. The claims against Nurse Byrd and Nurse Snell are in their individual capacities, not in their official capacities as employees of the management of the prison.

Nurse Byrd, who dispensed medication at night, and Nurse Snell, who dispensed medication during the day, did not diagnose, recommend or prescribe medications for the inmates. Their sole duties consisted of dispensing those medications that had been prescribed

and approved by the weekend inmates private physicians and the staff physician at the prison infirmary.  The weekend inmates were well informed of their responsibility to bring their medications to the prison each weekend, and Mr. Jackson admits that he was aware of this.  Arthur Jackson, on his own accord, had decided not to bring his medications and did not arrive at the prison with his medications  the weekend of his accident.

There has been no evidence whatsoever that Nurse Byrd or Nurse Snell denied Mr. Jackson medication at any time during their interactions with him.  There has been no evidence whatsoever that any actions or inactions of Nurse Byrd or Nurse Snell rose to the egregious level of deliberate indifference necessary to prove a claim under § 1983, or that their actions or inactions were even negligent.

**DAMAGES**

Plaintiff Arthur Jackson claims that as a result of his fall at the prison he has suffered cognitive, behavioral and sexual problems.  However, Mr. Jackson, at the time of his fall, was, and still is, collecting Social Security disability benefits.  In the application for these benefits, in 1996,  Mr. Jackson, claimed to be suffering from back problems, testicular problems and, in addition, virtually the same cognitive and behavioral problems that he claims to have suffered as a result of  the fall at the prison  in the instant case.  In a handwritten questionnaire that Mr. Jackson filled out during the Social Security disability application process, he alludes to the very same problems he claims to have suffered from the fall at the prison.

Plaintiff's experts opinions do not address any of the obvious alternate causes that the discovery process is brought to light:   that Mr. Jackson's fall was due to alcohol withdrawal and/or a hyponatremic condition caused by Mr. Jackson flushing his system with water prior to

arriving at the prison that weekend. Plaintiff's psychiatric expert, Lee Silverman, M.D., was deposed recently and testified that Mr. Jackson was given, for free, a three month supply of Klonopin in Mid-April, 2000 (about midway through his incarceration) and that Dr. Silverman would supply free samples of the medication any time Mr. Jackson requested it. Dr. Silverman also testified that he and Mr. Jackson's internist, Dr. Ebba, had conferred in March, 2000 (during Mr. Jackson's incarceration) regarding their suspicion that Mr. Jackson was drinking excessively. They both agreed that their suspicions were justified. On at least two Friday's when Mr. Jackson was to report to the prison for his 48 hour stay, he was sent up to the main prison after being perceived as obviously inebriated by the intake officers. Mr. Jackson was treated with Librium on several occasions when diagnosed by the prison physician as withdrawing from alcohol.

     Following Mr. Jackson's fall, he was taken to Crozer-Chester Hospital emergency room where blood tests and urine tests were performed. No trace of Klonopin was discovered through a urine test. Klonopin has been described as having a very lengthy half-life and Mr. Jackson, taking 5 mg. per day, would be considered a chronic user. Dr. Ebba also informed Dr. Silverman that Mr. Jackson related to him that he had stopped taking his Klonopin "several days" prior to his fall.

     At Crozer-Chester, Mr. Jackson was also diagnosed with a hyponatremic condition. This is a low salt condition, which could be caused by an excessive amount of water being ingested. Mr. Jackson had testified earlier that he was actively drinking during the weekdays while he was serving his fifteen week sentence, and he admitted to the emergency room personnel that he had been "flushing out" his system.

    Despite the overwhelming evidence of alcohol withdrawal and/or hyponatremia being a cause of Mr. Jackson's fall, neither Dr. Silverman or Plaintiff's neurology expert, Dr. Gzesh, ever addressed this.

    Mr. Jackson's own actions and inactions in: Continuing to actively drink alcohol, deciding not to bring his medications to the prison, and flushing his system with excessive amounts of water prior to reporting to the prison are proof of contributory negligence.

    Respectively submitted,

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN,**

By: /s/ David F. White, Esquire
    DAVID F. WHITE, ESQUIRE
    Attorney I.D. No. 46585
    DENNIS P. HERBERT, ESQUIRE
    Attorney I.D. No. 65847
    Attorneys for Defendants,
    Wackenhut Corrections Corporation,
    and The Wackenhut Corporation
    620 W. Germantown Pike
    Suite 350
    Plymouth Meeting, PA 19462

Dated: /s/ May 3, 2004

\24_A\LIAB\DPH\LLPG\619614\LHM\16422\00102

| | | |
|---|---|---|
| ARTHUR JACKSON, III | : | CIVIL ACTION |
| vs. | : | |
| DELAWARE COUNTY; WACKENHUT | : | |
| CORRECTIONS CORPORATION C/O | : | |
| PRENTICE HALL CORP.; WACKENHUT | : | |
| CORPORATION; DELAWARE COUNTY | : | |
| BOARD OF PRISON INSPECTORS; | : | |
| CHARLES SEXTON, CHAIRMAN OF | : | |
| DELAWARE COUNTY BOARD OF | : | |
| PRISON INSPECTORS; GEORGE HILL, | : | |
| SUPERINTENDENT OF DELAWARE | : | |
| COUNTY PRISON (GEORGE W. HILL | : | NO. 02-3230 |
| CORRECTIONAL FACILITY); JAMES | : | |
| JANECKA, WARDEN OF DELAWARE | : | |
| COUNTY PRISON; DEBORAH | : | |
| PERRETTA, HEALTH SERVICES | : | |
| ADMINISTRATOR OF DELAWARE | : | |
| COUNTY PRISON; MARGARET | : | |
| CARRILLO, M.D., DELAWARE | : | |
| COUNTY PRISON; DR. FREDERICK, | : | |
| DELAWARE COUNTY PRISON; DR. | : | |
| HOLLAND HULL, DELAWARE | : | |
| COUNTY PRISON; MERIAN BYRD, | : | |
| NURSE, DELAWARE COUNTY | : | |
| PRISON; CAROL SNELL, NURSE, | : | |
| DELAWARE COUNTY PRISON | : | |

**CERTIFICATE OF SERVICE**

I, David F. White, do hereby certify that a true and correct copy of the Settlement Conference Memorandum has been served by U.S. Mail, First Class, postage prepaid, to the following at the addresses and on the date listed below:

Derrick Howard
John Rollins, Esquire
HOWARD ROLLINS & JONES
1319 South Broad Street
Philadelphia, PA  19147

Kathleen E. Mahoney, Esquire
Robert M. DiOrio, Esquire
Front and Plum Streets
P.O. Box 1789
Media, PA  19063

William C. Reil, Esquire
42 S. 15th Street
210 Robinson Bldg.
Philadelphia, PA  19102

/s/ David F. Whit
David F. White

May 3, 2004
Date

Case 2:02-cv-03230-MMB   Document 78   Filed 05/03/2004   Page 8 of 8